STATE OF MAINE ex rel. GEORGE M. SEIDERS, Attorney General,

*vs.*

CITY OF BANGOR AND CITY OF BREWER.

Penobscot.    Opinion November 14, 1903.·

*Const. Law.    Eminent Domain.    Corporations.    Charter,* Extension.    *Toll-Bridge.*
*Condemnation Proceedings.    Award.    Confirmation,* by consent.    *Waiver.*
*Apportionment    of    Value,* between two cities.    *Committee*—Personnel of.
*County Commissioners,* Remote interest disregarded by legislature.    *Vote.*
*Collateral Attack.    Mistake,* of voters.    *Highway.    The Public,*
Protection of its interest.    *Attorney    General.    Mandamus.*
*Const.    Maine    Art.    IV,    §    14,* (Amend. of 1875).    *Spec.*
*Laws, 1828, c. 529;  1846, c. 325;  1895, c. 208;*
*1901, c. 360.*

The further extension of an old toll-bridge charter is not equivalent to the
    granting of a new charter.

Where a toll-bridge is converted into a highway, the two cities divided by
    the river spanned by the bridge, are bound under the law to maintain it.

There can be no impropriety in the legislature allowing these cities to declare
    their desire as a condition precedent to the taking or purchasing of such a
    toll-bridge for a highway.

Section 14 of Article IV Const. of Maine (the amendment of 1875), relating to
    the organization of corporations under general law, has been held to have
    no application to charters previously granted, even though amended
    subsequently.

The Bangor Bridge Company was chartered in 1828, and was then granted
    the right to take tolls for fifty years.    In 1846 it was granted the right to
    rebuild its bridge, and its right to take tolls extended to fifty years from
    the time the bridge should be reopened to passengers.    Nothing in either
    act provided for forfeiture of the bridge to the public after the right to take
    tolls had expired.    *Held;* that, even if forfeiture would have resulted with-
    out legislative action (which is not here decided), it was certainly compe-
    tent for the legislature to waive the forfeiture, that being the only power
    authorized to claim it for the State.

The act of 1895, extending the time for taking tolls by the Bridge Company,
    was within the legitimate authority of the legislature.

It is claimed that at the March Meeting in 1902, in Bangor, when by a majority vote it was determined to "buy and make free the toll-bridge," the voters acted under a misapprehension of the facts and of the value of the bridge. *Held;* that it is too late for Bangor to raise this objection, when, long after the vote was taken, it joined with Brewer in a petition to the Chief Justice, asking the appointment in accordance with the act, of a committee to find the value of the bridge property ; which was done, and the appraisal accepted and confirmed, with the consent of all parties, including Bangor.

When each of the cities had duly voted to take or purchase the bridge as provided in the acts of 1895 and 1901, and the value of the bridge property had been determined, the rights of all parties became vested, and the statutes then became imperative upon both cities to pay the price awarded by the committee and to take the bridge by eminent domain as authorized by sec. 1 of the statute of 1901.

The Bridge Company had no option, and neither Bangor nor Brewer could, by any action at any meeting called subsequently to that in which the vote had been taken, rescind their former vote, or escape the duty imposed by the act of 1901.

Neither of the cities can complain that the assessment of value by the committee was erroneous or excessive, since that assessment was confirmed by the Chief Justice, with the consent of both.

One span of the bridge was carried away by a freshet March 22, 1902. The petition for appraisal of the value of the bridge was not filed until April 14, 1902. Beginning in the same spring, and working during the summer and fall of 1902, the Bridge Company replaced the span carried away, with one of steel, at a cost of about $26,000. Bangor and Brewer agreed that the appraisal should be had as the bridge was at the date of the petition, with the span out, and further agreed that if the two cities were finally compelled to pay the award of the committee, they should pay the Bridge Company, in addition, the cost of the new steel span ; and this agreement was stated by counsel for both cities to the committee. *Held;* that, in view of these facts, a contention that an entire bridge was to be appraised is not well founded.

When it is clear that the legislature, in designating the County Commissioners to determine the proportion of value of a bridge to be paid by each of two cities, understood that one or more of the commissioners would likely be citizens or tax payers in one of the cities, *held;* that the legislature clearly intended to ignore the remote interest possessed by one of the commissioners by reason of being a resident and tax payer of one of such cities.

The determination by the County Commissioners of the proportions of the value to be paid respectively by Bangor and Brewer for the bridge property, and for its subsequent maintenance, is final and conclusive, and cannot be attacked, except for fraud or mistake.

Where two cities have consented to the taking of a toll-bridge for a highway by proper condemnation proceedings, the public are interested that the end sought shall be reached. It should not be suffered to fail by the inaction of the Bridge Company or either of the cities.

The duty of the cities to pay, and of the Bridge Company, upon payment, to surrender the bridge, are duties in the performance of which the public have an interest. That interest is and can only be represented by the Attorney General, acting for the State.

Mandamus is the appropriate and only process by which the State can compel the performance of the duties owed to the public in connection with this bridge by the cities of Bangor and Brewer, and thus secure a free bridge for public use.

On report. Peremptory writ of mandamus to issue as prayed for.

Petition for mandamus. It was agreed by the parties at the argument of the cause before this court in banc that the petition and answers should be regarded as the alternative writ and return.

The petition was as follows: —

To THE HONORABLE WILLIAM PENN WHITEHOUSE,

Justice of the Supreme Judicial Court:

And now comes George M. Seiders, Attorney General for the State of Maine, in his proper person, and by virtue of his office and in behalf of said State, and respectfully represents:

FIRST. That on the thirteenth day of March, A. D. 1901, and for a long time prior thereto, the Bangor Bridge Company, a corporation duly created and organized under the laws of the State of Maine, was and ever since has been and now is maintaining a toll-bridge with its approaches between the cities of Bangor and Brewer across the Penobscot River, and that during said time there has been and now is no highway between said cities.

SECOND. That by Chapter three hundred and sixty of the Private and Special Laws of Maine for the year nineteen hundred and one, approved March 13, 1901, and now in force, the following provision was made by the legislature, to the end that the said bridge and its approaches might be a public highway, to wit:

"Section 1. Chapter two hundred and eight of the private and special laws of one thousand eight hundred and ninety-five is hereby amended so that said chapter, as amended, shall read as follows:

'Section 1. The cities of Bangor and Brewer, or either of them, with the assistance of the County of Penobscot as hereinafter provided, are authorized to take and purchase the bridge, property and appurtenances of the Bangor Bridge Company, on the payment to said Company of such sum as may be agreed upon; or as may be found as the value of said bridge, property and appurtenances, by a committee of three disinterested men, to be appointed by the Chief Justice of the Supreme Judicial Court, the award of a majority of whom shall be reported to the Supreme Judicial Court, in Penobscot County, in term time or in vacation, and the said Chief Justice may confirm the same or recommit it for the correction of errors, if justice so requires. The award of the committee shall be conclusive as to the amount.

'Section 2. The said cities of Bangor and Brewer may at any time file a petition in the Clerk's office of the Supreme Judicial Court for said County of Penobscot, in term time or in vacation, addressed to the said Chief Justice of said court, who, after notice to said Bridge Company and said County Commissioners, shall after hearing and within twenty days after the filing of said petition, appoint said committee, who shall forthwith organize, and after due notice and hearing proceed under proper instruction from said court, to the determination of the value of said bridge, property and appurtenances. In assessing and determining the value, the committee shall not award anything for franchise.

'Section 3. Until this value shall be agreed upon, or determined as aforesaid, and the amount thereof shall be paid to said Bridge Company, the right to take tolls as established by chapter three hundred and twenty-five of the laws of eighteen hundred and forty-six, and not exceeding the rates now charged shall be continued subject, however, to legislative regulation, as provided in said chapter.

'Section 4. If the cities of Bangor and Brewer and the County Commissioners of Penobscot County shall jointly agree with said Bridge Company upon said value, or if said value be determined as aforesaid, the said County Commissioners are hereby directed and authorized to cause forthwith to be paid to said Bridge Company

from the treasury of the County of Penobscot and of the moneys of said County a sum equal to one-half of the value of said bridge ascertained in either of the above named ways; provided, however, that if said one-half of said value shall exceed the sum of twelve thousand dollars, said County of Penobscot shall pay said sum of twelve thousand dollars to said Bridge Company for its portion of said value and no more; provided further, that such payment by said county to said Bridge Company shall not be made unless and until said cities shall pay the remainder of said value ascertained as aforesaid. And if, in either case, said cities shall be unable to agree upon the respective proportions to be paid by them of the remainder of the value of said bridge ascertained as aforesaid, and shall be unable to agree in what proportions said bridge shall be maintained by them after said payment of said value to said Bridge Company such respective proportions shall be determined at the request of either city, and after notice to the other and hearing, by the County Commissioners of Penobscot County. When said amounts shall be so determined, the said cities shall pay the same to the said Bridge Company and said bridge shall be maintained by said cities in the proportions determined as aforesaid.

'Section 5. From and after payment of said value to said Bridge Company said bridge and its approaches shall be a highway and shall be maintained by said cities of Bangor and Brewer in the proportions agreed upon by said cities or determined by said County Commissioners as above provided.

'Section 6. The County Commissioners of Penobscot County are hereby authorized and directed to proceed forthwith as soon as said value shall be agreed upon or determined as provided by this chapter and the proportionate amount of said value to be paid by said cities shall have been agreed upon by said cities or determined according to the provisions of this chapter, to obtain loan or loans of money for said purpose of paying its portion of the value of said bridge as aforesaid and cause notes or obligations of said county with coupons for interest not exceeding six per cent, to be issued upon such time as they may deem expedient.'

'Section 7. This act shall take effect when approved.'"

THIRD. That at the municipal election held in the City of Bangor on the tenth day of March, A. D. 1902, the legal voters of said city voted upon the following question inserted in the warrants issued for such election, viz:

"Shall the cities of Bangor and Brewer buy and make free the toll-bridge, the county to pay twelve thousand dollars towards the same, at a price to be determined by appraisal as provided by law."

And the number of "Yes" votes thereon was sixteen hundred and sixty-five, and the number of "No" votes thereon was nine hundred and eleven.

FOURTH. That at the municipal election held in the City of Brewer on the tenth day of March, A. D. 1902, the legal voters of said city voted upon the following question inserted in the warrants issued for such election, viz:

"Shall the cities of Bangor and Brewer buy and make free the toll-bridge, the county to pay twelve thousand dollars towards the same, at a price to be determined by appraisal as provided by law."

And the number of "Yes" votes thereon was five hundred and forty, and the number of "No" votes thereon was sixty-five.

FIFTH. That at the April term of the Supreme Judicial Court for the County of Penobscot the cities of Bangor and Brewer filed their petition under the act recited as aforesaid, addressed to the Chief Justice of said court, who, after notice to said Bridge Company and said County Commissioners, after hearing and within twenty days after the filing of said petition, appointed a committee of three disinterested men, who forthwith organized, and after due notice and hearing proceeded under proper instructions from said court, to the determination of the value of said bridge, property and appurtenances, and in assessing and determining such value said committee did not award anything for franchise. And on the fourth day of November, A. D. 1902, the award of said committee was reported to the Supreme Judicial Court in said Penobscot County, finding the value of said bridge property and its appurtenances to be Sixty-two Thousand Three Hundred and forty-eight dollars ($62,348) and

said award on the twenty-first day of November, A. D. 1902, was confirmed by the said Chief Justice as in said act provided, and then became and ever since has been the judgment of said court of record therein.

That under said act, recited aforesaid, it was the duty of the County of Penobscot to pay the sum of Twelve Thousand Dollars ($12,000) to said Bridge Company for its portion of said value, and no more; with a provision, however, that such payment by said county to said Bridge Company is not to be made unless and until said cities shall pay the remainder of said value ascertained as aforesaid.

SIXTH. That the said cities of Bangor and Brewer were unable to agree upon the respective proportions to be paid by them of the remainder of the value of said bridge ascertained as aforesaid, and were unable to agree in what proportion said bridge should be maintained by them after said payment of said value to said Bridge Company, and thereupon, by reason of said inability so to agree as aforesaid, the City of Brewer, as in said act provided, by its petition dated December 16, 1902, requested the County Commissioners of Penobscot County, after notice to the City of Bangor and hearing, to determine such respective proportion as by said act provided. And after notice to the City of Bangor and hearing thereon on the twenty-sixth day of December, 1902, the said County Commissioners of Penobscot County did, by their report thereof made and recorded on the twenty-seventh day of December, A. D. 1902, determine that after deducting from the aforesaid award of Sixty-two Thousand Three Hundred and Forty-eight dollars ($62,348) aforesaid the sum of Twelve Thousand Dollars ($12,000) so to be paid by the County of Penobscot, the City of Bangor should pay as its proportion of the remainder of said award the sum of Forty Thousand Two Hundred and Seventy-eight Dollars and forty cents ($40,278.40) being four-fifths of such remainder, and the City of Brewer should pay as its proportion one-fifth of such remainder so ascertained, to wit, Ten Thousand and Sixty-nine Dollars and sixty cents ($10.069.60) and said commissioners did then, and as a part of the same record, determine that from and after the payment to said Bangor Bridge Company of the above

named sums by said cities of Bangor and Brewer, and Twelve Thous-
and Dollars ($12,000) by the said County of Penobscot, that said
bridge, its approaches, and all expenses incident to the proper main-
tenance thereof, should be maintained by the cities of Bangor and
Brewer in the proportions above named, to wit, Bangor four-fifths and
Brewer one-fifth.

SEVENTH.   That on said twenty-seventh day of December, 1902,
it became the duty of the cities of Bangor and Brewer to pay the
aforesaid amounts to the Bangor Bridge Company, and to assume the
maintenance of said bridge as a highway upon the payment of the
sum of Twelve Thousand Dollars ($12,000) therefor by the County
of Penobscot.   But your petitioner avers that greatly to the prejudice
of the State, and in violation of their public duties so to be performed
by them, said cities have hitherto wholly neglected and refused so to
perform the duties imposed upon them by the legislature of Maine.

EIGHTH.   That on the fourth day of May, A. D. 1903, demand
in writing was made upon the City of Bangor and upon the City of
Brewer to forthwith pay to the Bangor Bridge Company the amounts
so respectively determined as aforesaid under said act, and both said
cities have neglected and refused hitherto so to pay the same.

NINTH.   That the public safety requires that said bridge be forth-
with made safe and convenient for public travel, and that the neces-
sary repairs, renewals and strengthening thereof cannot be made until
said cities shall perform their duty aforesaid.

TENTH.   Wherefore your petitioner respectfully represents that
it is now and ever since the twenty-seventh day of December, 1902,
has been the duty of the City of Bangor and of the City of Brewer to
pay to the Bangor Bridge Company the amounts as determined as
aforesaid under said special act to be respectively paid by said cities,
and to assume the maintenance of said bridge in the proportions
aforesaid upon the further payment to said Bridge Company of the
aforesaid sum of Twelve Thousand Dollars ($12,000) by the County
Commissioners of Penobscot County, to the end that such bridge and
its approaches should be a highway to be thereafterwards maintained

by said cities of Bangor and Brewer in the proportions determined as aforesaid by said County Commissioners.

ELEVENTH. The State of Maine has no legal or other adequate remedy in the premises.

Wherefore, the said Attorney General prays that a writ of mandamus may be issued from the Supreme Judicial Court against the said City of Bangor, and the said City of Brewer, commanding them to forthwith pay to the Bangor Bridge Company the sum of Fifty Thousand Three Hundred and Forty-eight Dollars ($50,348) in the following proportions: The City of Bangor Forty Thousand Two Hundred and seventy-eight dollars and forty cents ($40,278.40) and the city of Brewer Ten Thousand and Sixty-nine Dollars and sixty cents ($10,069.60) and to assume the maintenance of the bridge and approaches of the Bangor Bridge Company, upon the payment to said Bangor Bridge Company of the sum of Twelve Thousand Dollars ($12,000) by the County of Penobscot, and to thereafterwards maintain the same in the following proportions: The City of Bangor four-fifths, and the City of Brewer one-fifth, and that a rule of Court be issued commanding said City of Bangor and the said city of Brewer to appear before a justice of said Supreme Judicial Court and show cause, if any they have, why the prayer of this petitioner should not be granted.

GEO. M. SEIDERS,<br>Attorney General for<br>State of Maine.

The verification was by the relator's oath, "that the foregoing petition by him signed is true in substance and in fact."

*H. M. Heath, C. L. Andrews and F. L. Dutton,* for the relator.

*Enoch Foster, T. D. Bailey,* City Solicitor, for respondent City of Bangor.

This action, although in the name of the Attorney General, is for the benefit of the Bridge Company. The Bridge Company has an adequate remedy by action of debt. It cannot use the Attorney General as a figure-head to enforce its private remedies. Spelling on Ex Rel. § 1626.

Although municipal corporations, as public agents, are exempt from suit, except when authorized by statute, yet in this case, if the act of the legislature was valid at all, it expressly authorized the city of Bangor to contract, in reference to this particular subject matter. Assuming the validity of the act, an action would lie against the city for the non-performance of its undertaking, by virtue of the doctrine of authorized contracts, aside from the action on the award.

There is no necessity for the extraordinary remedy of mandamus against municipal corporations in the New England States because a judgment can be enforced and collected without. That is, the property even of private individuals within the city may be seized and sold on execution, to satisfy a judgment legally obtained. These two remedies at law, therefore, not only exist, but are complete.

The writ cannot issue, because the mandate must follow the prayer. The prayer of the petition is to compel the City of Bangor to "forthwith pay to the Bangor Bridge Company, etc." There is neither allegation nor proof that there is any money in the City Treasury, other than that needed for necessary running expenses. And further the case made out by this respondent shows that funds for such payment do not exist.

The prayer should be to compel the city to levy a tax. A municipal corporation is not personal. The mandate must be against the proper officers of the city.

Where mandamus is asked, the specific legal right sought to be enforced must be clear and unextinguishable, not doubtful or requiring litigation to settle it. In this case the supposed right is not clear.

In support of the claim made by the respondent, City of Bangor, that the title to the bridge became vested in the public, at the expiration of the charter in 1896, counsel cited *Police Jury et al.* v. *Thibodoux Bridge Co.*, 44 La. 141; *State* v. *Lawrence Bridge Co.*, 22 Kan. 438; *Com.* v. *Wilkinson*, 16 Pick. 175, 26 Am. Dec. 654; *Central Bridge Corp.* v. *Lowell*, 15 Gray. 110, 114; Elliott on Roads and Bridges, pp. 33, 36.

The defendants agreed to build the bridge, for the convenience of the public, in consideration of the franchise to collect tolls, for a

designated number of years. At the termination of the franchise, they were bound to deliver the bridge to the public, "disburdened of tolls." *Craig* v. *People*, 47 Ill. 487; *State* v. *Lake*, 8 Nev. 276; *Thompson* v. *Matthews*, 2 Ed. Ch. 212.

A judgment may be attacked collaterally in mandamus proceedings for collusion or fraud, when the petition goes behind the judgment sought to be enforced. *Lawrence Mfg. Co.* v. *Janesville Cotton Mills*, 138 U. S. 562; *Ward* v. *Joslin*, 186 U. S. 152; *Wilder* v. *Rio Grande County Commissioners*, 41 Fed. Rep. 512; *Canal Bank* v. *Partee*, 99 U. S. 325; *Howard* v. *City of Huron*, 5 S. Dakota, 539, 26 L. R. A. 493; *Brownsville* v. *Loague*, 129 U. S. 493; *Gayle* v. *Owen*, 83 Ky. 61; Spelling on Ex Rel. § 1470.

Under the doctrine of these cases, the constitutionality of the acts upon which this judgment or award is based, may be attacked.

The acts of 1895 and 1901, both of which are set out and referred to in the petition, are special legislation inhibited by Art. IV, § 14, par. 3 of the State Constitution. By these acts the time for taking toll was continued indefinitely. This is equivalent to granting a new charter to the Bridge Company.

It will not be contended that this extension was for municipal purposes, or that it was a case where "the objects of the corporation cannot otherwise be attained."

Counsel contended that the act of 1901 amending the act of 1895 is null and void, in contravention of the Constitution of the State. *State* v. *Lawrence Bridge Co.*, 22 Kan. 438.

Upon the expiration of the franchise the easement was still in the public, disburdened of tolls, but otherwise unaffected. *Murray* v. *County Commissioners*, 12 Met. 458; *State* v. *Maine*, 27 Conn. 641, 71 Am. Dec. 89.

Counsel contended that the appraisal made by the committee was illegal, since the whole middle part of the bridge, 219 feet in length had been carried away by a freshet subsequent to a vote in favor of taking the bridge, so that when the appraisal was made, only two ends of the bridge were in existence. It has been held in this State, that when the owner of land with buildings thereon agrees to convey it at a future day, on payment of the purchase money by the pur-

chaser and before payment and conveyance, the buildings are destroyed by fire, without fault of either party, the loss must fall upon the vendor; and if the building formed a material part of the value of the premises, the vendee cannot be compelled to pay the purchase money and take a deed of the land alone. *Gould* v. *Murch,* 70 Maine, 288, 35 Am. Rep. 325; *Thompson* v. *Gould,* 20 Pick. 134; *Wells* v. *Calnan,* 107 Mass. 514, 7 Am. Rep. 65.

Counsel urged that the interest of one of the commissioners as a citizen and tax payer of Brewer disqualified him, and that the acts of the board were illegal and void in apportioning the value of the bridge between the two cities; and called attention to the protest entered by Bangor at the hearing before the commissioners.

The act of 1895 vested a discretion in the two cities to take the bridge or not at their option. "Where the statute law vests in a corporation, or in its governing body or officers, a discretion in relation to a particular matter, that discretion will not be controlled by mandamus, whether it has been exercised wisely or unwisely." Thompson on Corporations, § 7829.

Counsel further contended that the statutes of 1895 and 1901 are unconstitutional; first, because they authorize the majority of the voters of a town to vote away the money of the minority against their will, for something which they already own; and, second, these acts impose a perpetual tax on the people, entirely inadequate to the consideration received.

"The Constitution gives no authority to raise money to give away." *Perkins* v. *Milford,* 59 Maine, 318.

*F. A. Floyd,* City Solicitor, for respondent City of Brewer, submitted without argument.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

STROUT, J. This is a petition for mandamus. For more than fifty years prior to 1901, the Bangor Bridge Company, under charter from the Legislature, had maintained a toll-bridge over the Penobscot River, between the cities of Bangor and Brewer. By chapter

208 of the Private and Special Laws of 1895, as amended by chapter 360 of the Special Laws of 1901, the two cities, with the assistance of the County of Penobscot, as therein provided, were authorized to "take and purchase the bridge, property and appurtenances" of the Bridge Company at a price to be agreed upon, or if not agreed upon, at the appraisal of a committee of three, to be appointed by the Chief Justice, and to be thereafter maintained by the two cities as a highway. The award of such committee to be conclusive of the value. The proportion of the value to be paid, and the expense of maintenance to be borne by Bangor and Brewer, if not agreed upon, to be determined by the County Commissioners of Penobscot County; March 10, 1902, both cities voted to buy the bridge and make it free. Bangor and Brewer did not agree with the Bridge Company upon the price, and thereupon both cities applied to the Chief Justice for the appointment of a committee, to determine the value of the bridge, property and appurtenances of the Bridge Company. On this petition a committee was appointed, who appraised the value of the Bridge Company's property, at the sum of $62,348.00. The report and appraisal of this committee was accepted and confirmed by the Chief Justice, by consent of the Bridge Co. and Bangor and Brewer on the twenty-first day of November, 1902. All these proceedings appear to be in conformity with the statute.

Bangor and Brewer having failed to agree upon the proportion to be paid by each for the property, or the proportion to be borne by each in its future maintenance, the City of Brewer by petition to the County Commissioners requested them to determine their respective proportions in accordance with section 4, chapter 360 of the Special Laws of 1901. On this petition the County Commissioners determined that Bangor should pay for the purchase four-fifths of $50,348, that being the amount of the value determined by the committee previously appointed, less $12,000 which the statute required the County of Penobscot to pay, and the City of Brewer should pay the remaining one-fifth, and that the expense of the future maintenance of the bridge should be borne by the two cities, in the same proportion. All these proceedings appear to be in due form.

Upon this petition for mandamus to compel Bangor and Brewer to

pay the Bridge Company the amounts thus awarded, and to assume the future maintenance of the bridge and its approaches, in the proportions thus determined by the commissioners, Brewer, by its answer, admits its willingness to perform, but Bangor objects upon several grounds.

It is claimed that the act of 1895 as amended by the act. of 1901, "delegated public rights and prerogatives to private individuals and corporations" without consideration, and thereby improperly imposed burdens upon the public.

This contention is without merit.    To change a toll-bridge to a free public highway is certainly a matter of public interest, broader than the local advantage to Bangor and Brewer.    No prerogative was illegally delegated.    The act authorized Bangor and Brewer to purchase the bridge, to make it public and free, or if a purchase was not made, to take it by right of eminent domain and thereafter maintain it for the public use.    It was competent for the Legislature to do this, as under the law, if the bridge became a highway, Bangor and Brewer would be bound to maintain it, and there was no impropriety in allowing these cities to declare their desire as a condition precedent to the taking or purchase of the bridge.

It is also claimed that at the expiration of the time limited in the charter of the Bridge Company for the taking of tolls, the bridge became public property as a highway, and that the Legislature could not extend the period for taking tolls, as the acts of 1895 and 1901 provided,—that such extension was equivalent to the granting a new charter, which is prohibited by the constitutional amendment of 1875, since when such corporations can only be created under the general law.    This constitutional provision has been held not to apply to charters previously granted, though amended subsequently, nor is such extension equivalent to a new charter.    *Farnsworth* v. *Lime Rock Railroad Co.*, 83 Maine, 440; *Foster* v. *Essex Bank*, 16 Mass. 245, 8 Am. Dec. 135; *Vose* v. *Handy*, 2 Maine, 329.    This Bridge Company was chartered in 1828, and granted the right to take tolls for fifty years.    In 1846 it was granted the right to rebuild its bridge, and its right to take tolls extended to fifty years from the time the bridge should be reopened for passengers.    Nothing in either act

provided for forfeiture of the bridge to the public, after the right to take tolls had expired. But if such would have been the result, if no action of the Legislature had occurred, it was certainly competent for the State to waive the forfeiture, that being the only power authorized to claim it. That body, by the act of 1895, extended the time for taking tolls by the Bridge Company. Such extension was within its legitimate authority. *Lincoln & Kennebec Bank* v. *Richardson,* 1 Maine, 80.

It is admitted that the Bridge Company had title by deed to the land approaches to the bridge at both ends, from the bridge to the highways. It admits of great doubt whether such title to real estate could in any event be regarded as forfeited to the public, when the right for taking toll had expired, there being no provision in the charter to that effect.

It is also claimed that the voters in Bangor, at the meeting in March, 1902, when it was determined to "buy and make free the toll bridge," acted under a misapprehension of the facts and of the value of the bridge. But after the vote the cities of Bangor and Brewer, by their petition to the Chief Justice as provided by the act of 1895 as amended by the act of 1901, asked the appointment of a committee to find the value of the bridge, property and appurtenances as provided by the acts. On this petition a committee was appointed, an appraisal made and returned to the Chief Justice and was duly accepted and confirmed by him on November 21, 1902, the Bridge Company and the cities of Bangor and Brewer "consenting thereto." It is now too late for Bangor to raise this objection, in the absence of a fraudulent valuation, which is not claimed.

When Bangor and Brewer had each, at a legal meeting of their voters, consented to take or purchase the bridge, to make it free, as provided in the acts of 1895 and 1901, and the value of the bridge property had been determined, the rights of all parties became vested and the statutes then became imperative upon both cities to pay the price awarded by the committee, and to take the bridge under eminent domain as authorized by section 1, of the statute of 1901. The Bridge Company had no option, and neither Bangor nor Brewer, could by any action at any meeting called subsequently to that in

which the vote had been had, rescind their former vote, or escape the duty imposed by the act of 1901. *Furbish* v. *Co. Com.,* 93 Maine, 129. Nor can they complain that the assessment of value by the committee was erroneous or excessive, since that assessment has been confirmed by the Chief Justice, with their consent.

It appears that on March 22, 1902, one span of the bridge was carried away by a freshet. The petition for appraisal of value was filed on April 14, 1902, and the appraisal was of its value, with that span out. It was in evidence that during the spring, summer and fall of 1902, the Bridge Company replaced this span with one of steel at a cost of about $26,000, and that that span was not included in the appraisal. It is also in evidence and uncontradicted, that at the time of the appraisal, the cities of Bangor and Brewer agreed that the appraisal should be had as the bridge was at the date of the petition, with the span ·out, and if Bangor and Brewer were finally compelled to pay the award of the committee they should pay the Bridge Company, in addition, the cost of the steel span, and this agreement was then stated by counsel of both cities to the committee. These facts afford a complete answer to the argument that a bridge was to be appraised, and in fact the appraisal was of a part of a bridge only.

A more difficult question is presented. The act of 1895 and that of 1901, both provided that the county commissioners of Penobscot County should determine the proportional amount to be paid by Bangor and Brewer for the bridge property and for its future maintenance. This has been done by the commissioners, but it is strenuously urged that it is not binding, because one of the commissioners was a citizen and tax payer in Brewer, and thereby was interested and incompetent to act. This objection was made by Bangor at the hearing.

The theory of the common law is that any person having a direct pecuniary interest in the result of any controversy, ought not to testify, nor adjudicate in such case, from the fear that his interest may influence his testimony or judgment. He was required therefore to be indifferent as to both parties to the litigation, having no pecuniary interest either way. But there are exceptions to that rule,

sometimes from the necessities of the case, and more generally, as said in *Fletcher* v. *Somerset Railroad Company,* 74 Maine, 436, where the interest either way is "too remote, uncertain, contingent, speculative, theoretic and unsubstantial to be legally estimated."

But it is competent for the legislature to remove the disqualification for interest, as has been done in this State, in case of parties to suits, and other interested witnesses, and jurors, where the town or county in which they pay taxes may be benefited by the recovery. R. S. (1883), c. 82, § 87, and a Justice of this court where his county is interested, R. S. (1883), c. 77, § 1; *Commonwealth* v. *Brown,* 147 Mass. 585, 591, 9 Am. St. Rep. 736, 1 L. R. A. 620. It may do this by express language, or its intention to do so may be inferred. So it may be inferred from the necessities of the case. As was said in *Com.* v. *Ryan,* 5 Mass. 90, that while great care should be taken to provide judges and jurors as free from interest as possible, "it is sometimes not possible perfectly to adhere to it. Every fine to the use of the Commonwealth may affect the interest of every citizen, as it may lessen the public taxes; but if citizens cannot be judges and jurors, no offenses can be punished by fine. Where penalties are given to counties, the inhabitants may have an interest somewhat greater; and where penalties accrue to towns, the interest of the inhabitants may be a little more affected. This is all true in theory, but in practice it cannot be believed to have any affect. As some degree of interest in all cases of public prosecution for fines will necessarily be attached to jurors, it is for the legislature to decide when this theoretic interest shall be no good objection to a juror."

The legislative intention that a slight financial interest shall not disqualify a juror is readily inferred, where otherwise there would be a failure of justice. *Com.* v. *Ryan,* 5 Mass. 90; *Com.* v. *Worcester,* 3 Pick. 462; *Com.* v. *Burding,* 12 Cush. 506. In the latter case it was held that a Justice of the Police Court of Salem could try the case, although he was a tax payer in Salem and the fine went to that town.

If the State condemns land for a public use, the damages must be assessed by a jury of citizens of Maine, unless the parties agree upon

a committee, or none can be assessed and the condemnation would fail for non-payment of damages.

Jurors constantly sit in the trial of criminal causes which result in a fine paid to the state, and on appeals by land owners from the damages awarded by county commissioners on the location of a highway, where the damages are to be paid by the county in which the jurors are tax payers; but we are not aware that an objection on account of interest has ever been seriously entertained in such cases, though the statutes applicable are silent as to the question of interest, the inference being plain that from the necessities of the case the minute interest of the jurors in such cases is not a disqualification.

Our statutes contain many cases in which this same implication arises. In certain cases the county commissioners are authorized to appoint assessors of state and county taxes. R. S. (1883), c. 6, § 108. So in case of damages for public parks by appeal to county commissioners, R. S. (1883), c. 3, § 57—the establishment of ferries, R. S. (1883), c. 20, § 2—purchase of lot for school house by municipal officers, in certain cases, R. S. (1883), c. 11, §§ 56, 57, 58. In case of repairs to a way ordered by the commissioners, they may appoint an agent, in certain cases, to make them, audit the expense, and the town becomes liable therefor. R. S. (1883), c. 18, §§ 53, 54, 55; town ways laid out by municipal officers, damages awarded by them, R. S. (1883), c. 18, §§ 14, 16; assessors of taxes in towns. In all these cases, and others that could be cited, the legislature evidently intended that the officers charged with the duty should act, notwithstanding their minute pecuniary interest.

In many of the instances the officers charged with the duty are necessarily interested as tax payers.

In this case, when the act of 1895 was passed, the Honorable John A. Peters was Chief Justice, and remained so for nearly five years thereafter. He was a citizen of Bangor and a large tax payer in that city. Yet the legislature provided that the Chief Justice should appoint a committee to appraise the value of the bridge property, who were to act under his instructions. The authority to appoint the committee was limited to the Chief Justice, no other person could make the appointment. If the cities had acted within four and a

half years after the passage of the act, as they might have done, and were expected to do, the authority and duty of appointing the committee would have rested with him. Can it be doubted that the legislature intended to confer authority and impose a duty upon him as the Chief Justice, notwithstanding any interest he might have in the result as a tax payer in Bangor? It must have been expected that this duty would be discharged by him. If he could not act, all proceedings under the statute would fail, a result the legislature certainly did not intend. This consideration forces the conclusion that the legislature intended that his remote interest should not disqualify him.

So in both the act of 1895 and that of 1901, it was provided that the county commissioners of Penobscot county should determine the proportion to be paid by Bangor and Brewer, an authority and duty not more important than the appointment of a committee of appraisal, and instructions to it. The legislature understood the probability that one or more of the commissioners were likely to be citizens or tax payers in one of the cities. Yet it said nothing in the act about disinterestedness. It provided no other tribunal to make the apportionment. If for any reason the commissioners could not act, the purpose of the statute and of the two cities to obtain a free bridge must fail. The legislature reposed confidence in the character of the men who then were or should be commissioners, and imposed an important public duty upon them. All of them might be tax payers in one or both of the cities. No provision for disqualification on that account was contained in the act. No reason is perceived why a different rule should apply to the commissioners than that applied to the Chief Justice.

As in the case of the Chief Justice, the inference is overwhelming that the legislature intended to ignore the trifling and contingent interest of a tax payer in either city, too small "to be legally estimated," and that it should not disqualify. As evidence of such intention great stress is laid on the fact that otherwise no result could be attained in *Com.* v. *Ryan,* supra, and *Com.* v. *Burding,* 12 Cush. 506.

The difficulty is not met by the suggestion that the commissioner

residing in Brewer need not have acted, allowing the other members of the board to perform the duty. The statute conferred the power on the county commissioners as persons, not on the board of commissioners as a board. *Machias River Co.* v. *Pope,* 35 Maine, 19. It contemplated having the judgment of the three. They were not to act officially. Besides two or even all might have been tax payers in the city. *State* v. *Intoxicating Liquors,* 54 Maine, 568; *Com.* v. *Emery,* 11 Cush. 411.

It is further insisted that mandamus is not the proper form of remedy. It is true that it will not lie, unless the right is clear, and there is no adequate remedy by suit at law. It may be that after the appraisal by the committee and its acceptance and confirmation, the Bridge Company could maintain action against Bangor and Brewer to obtain payment of the award, but non constat that the Bridge Company desires to part with its property. It may prefer to retain it as a toll bridge, in which case no action would be brought. The corporation cannot be compelled to bring suit, and no execution or other process for collection of the award can issue from the court. The object of the statute was to obtain a free bridge for public use with the consent of Bangor and Brewer. That consent having been obtained, the public are interested that the end sought shall be reached. It should not be suffered to fail by the inaction of the Bridge Company or of the cities of Bangor and Brewer. The duty of the cities to pay, and of the Bridge Company, upon payment, to surrender the bridge, are duties in the performance of which the public have an interest. That interest is and can only be represented by the Attorney General, acting for the State. Mandamus is the appropriate and only process by which the State can compel the performance of the duties owed to the public by Bangor and Brewer, and secure a free bridge for the use of the public. *Sanger* v. *Co. Com.,* 25 Maine, 291; *Weeks* v. *Smith,* 81 Maine, 538; *Knight* v. *Thomas,* 93 Maine, 500; *Mitchell* v. *Boardman,* 79 Maine, 471.

The determinination of the county commissioners of the proportion to be paid by Bangor and Brewer for the bridge property, and for its subsequent maintenance, is final and conclusive, and cannot be attacked, except for fraud or mistake of material facts, neither of

which is proved nor claimed.    It cannot be attacked upon the ground of erroneous judgment.    It may be said, however, that according to the population and valuation of the two cities, Bangor does not appear to have any cause for complaint of the proportion assigned to it.

The prayer of the petition is that Bangor and Brewer may be commanded forthwith to pay to the Bridge Company the several amounts awarded against them by the committee, and, upon the payment of $12,000 by the county to assume the maintenance of the bridge thereafter in the proportions determined by the county commissioners. This is the proper prayer.    The cities can make payment from funds in their treasuries, or borrow the money, or assess a tax for the amount, at the option of each.    It is not for this court to direct the method.    That is left to the determination of each city.

The parties agreed at the argument that the pleadings should be regarded as the alternative writ and return.

*Peremptory writ of mandamus to issue as prayed for.*