## CHARLES W. RICE *vs*. THE GOVERNOR.

Suffolk.    November 16, 1910. — January 9, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Governor.    Mandamus.    Supreme Judicial Court.*

Money which came into the hands of a Governor from his predecessor in office, who received it from the Federal Government under the terms of 30 U. S. Sts. at Large, 1356, entitled "An Act to reimburse the Governors of States and Territories for expenses incurred by them in aiding the United States to raise and organize and supply and equip the Volunteer Army of the United States in the existing war with Spain," and for the purpose of being paid to the officers and men referred to in the act, was *held* to have been received by the Governor in his official capacity.

The Supreme Judicial Court has no power to issue a writ of mandamus addressed to the Governor of the Commonwealth regarding any of his official duties.

KNOWLTON, C. J.    Under the Act of Congress of March 3, 1899, (30 U. S. Sts. at Large, 1356,) which is amendatory of "An Act to reimburse the Governors of States and Territories for expenses incurred by them in aiding the United States to raise and organize and supply and equip the Volunteer Army of the United States in the existing war with Spain," approved July 8, 1898, a sum of money was paid to Curtis Guild, Jr., then Governor of Massachusetts, to be paid to officers and men, referred to in the act, who served in the war with Spain.    This money passed into the hands of his successor, the present Governor, and is now subject to his control.    By the terms of the act such money, under the circumstances that existed in this State, was " to be paid by the States and Territories direct to the officers and men," and none of it was to " be covered into the treasury of the State or Territory."    The petitioner claims a part of the money under assignments from thirty-two soldiers, the validity of which is questioned under § 3477 of the Revised Statutes of the United States, and he has brought this petition for a writ of mandamus to compel the respondent to pay it over.

It is plain that the money came into the hands of the respondent in his official capacity, as Governor of the Commonwealth, and that his only relations to it arose under the act of Congress which dealt with the governors as the executive representatives of the States, and, in States where no payments had been made

to the men for the services for which the money was awarded, the act sought to impose upon the governors an official duty to pay the money to the men who were entitled to receive it. This duty having been accepted by Governor Guild, and afterwards having been transferred to his successor, the respondent, and having also been accepted by him, the action which the petitioner seeks to compel is in no sense personal, but is strictly official. The most important question in the case is whether a writ of mandamus should be issued against the Governor of the Commonwealth, to compel the performance of an official duty.

This question has been considered in many cases in other States, and the decisions are far from uniform. It is well established that a writ of mandamus will not be issued to compel the doing of a particular act that involves the exercise of judgment or discretion by a public officer. *People* v. *Morton,* 156 N. Y. 136. *State* v. *Chase,* 5 Ohio St. 528. But, ordinarily, a public officer may be compelled to take some action, so far as to exercise his judgment and discretion in determining whether he ought to do or refrain from doing that which the petitioner desires of him in the performance of an alleged public duty.

The Governor of this Commonwealth, under our Constitution, is the " supreme executive magistrate." He is the commander-in-chief of the military and naval forces of the State. In our Constitution the division of the government into three departments, each independent of the other, is provided for in language picturesque and emphatic, " to the end that it may be a government of laws and not of men." Declaration of Rights, art. 30. In other States whose constitutions recognize a similar division of the government, it is generally, if not universally, held that, in the performance of his political duties as the highest executive officer, the Governor is not subject to supervision or direction by the courts. But in some jurisdictions there are decisions that, in the performance of strictly ministerial duties which might have been imposed upon some other officer, the Governor may be compelled to act by a writ of mandamus. See *Railroad Co.* v. *Moore,* 36 Ala. 371; *Harpending* v. *Haight,* 39 Cal. 189; *Martin* v. *Ingham,* 38 Kans. 641; *Magruder* v. *Swann,* 25 Md. 173; *Chumasero* v. *Potts,* 2 Mont. 242; *Cotten* v. *Ellis,* 52 N. C.

545; *Greenwood Cemetery Land Co.* v. *Routt*, 17 Col. 156; *Chamberlain* v. *Sibley*, 4 Minn. 309 ; *State* v. *Chase*, 5 Ohio St. 528. But the weight of authority, furnished by decisions in a larger number of States, and supported, as we think, by stronger reasons, is in favor of the proposition that governors of States are not amenable to the courts for their conduct in the performance of any part of their official duties. *Hawkins* v. *The Governor*, 1 Ark. 570. *State* v. *Drew*, 17 Fla. 67. *Low* v. *Towns*, 8 Ga. 360. *People* v. *Cullom*, 100 Ill. 472. *People* v. *Bissell*, 19 Ill. 229. *Hovey* v. *State*, 127 Ind. 588. *State* v. *Warmoth*, 22 La. Ann. 1. *Dennett, petitioner*, 32 Maine, 508. *Sutherland* v. *The Governor*, 29 Mich. 320. *Vicksburg & Meridan Railroad* v. *Lowry*, 61 Miss. 102. *State* v. *Stone*, 120 Mo. 428. *State* v. *The Governor*, 1 Dutch. 331. *People* v. *Morton*, 156 N. Y. 136. *Mauran* v. *Smith*, 8 R. I. 192. *Bates* v. *Taylor*, 87 Tenn. 319. *Teat* v. *McGaughey*, 85 Texas, 478. *Houston, Tap & Brazoria Railroad* v. *Randolph*, 24 Texas, 317. The subject is discussed learnedly by Mr. Justice Cooley in *Sutherland* v. *The Governor*, 29 Mich. 320, 323, where he says: " What is claimed is, that where the act is purely ministerial, and the right of the citizen to have it performed is absolute, the Governor, no more than any other officer, is above the laws, and the obligation of the courts, on a proper application, to require him to obey the laws, is the same that exists in any other case where an official ministerial duty is disregarded. . . . There is no clear and palpable line of distinction between those duties of the Governor which are political, and those which are to be considered ministerial merely; and if we should undertake to draw one, and to declare that in all cases falling on one side of the line the Governor was subject to judicial process, and in all falling on the other he was independent of it, we should open the doors to an endless train of litigation. . . . The apportionment of power, authority and duty to the Governor, is either made by the people in the Constitution, or by the Legislature in making laws under it; and the courts, when the apportionment has been made, would be presumptuous if they should assume to declare that a particular duty assigned to the Governor is not essentially executive, but is of such inferior grade and importance as properly to pertain to some inferior office, and consequently, for the purposes of their jurisdiction,

the courts may treat it precisely as if an inferior officer had been required to perform it. To do this would be not only to question the wisdom of the Constitution or the law, but also to assert a right to make the Governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to entrust to the other departments of the government."

Similar doctrine is stated in other cases cited above. We think it would be an unfortunate rule of law that would require this court, at the request of a petitioner, to scrutinize the official conduct of the Governor, in order to determine whether certain of his acts or omissions were in matters merely ministerial, or in the exercise of executive functions which properly pertained to his office. An order under a writ of mandamus against the Governor, if he should refuse to obey it, might present the strange spectacle of a direction by the court to the executive forces of the government, to coerce and punish the chief executive officer of the State, who commands and controls the military forces that are ultimately relied upon for the maintenance of law and order. It seems better to hold that, for whatever he does officially, the Governor shall answer only to his own conscience, to the people who elected him, and in case of the possible commission of a high crime or misdemeanor, to a court of impeachment. For these reasons we are of opinion that the petition should be dismissed.

In the view we have taken of the case, we cannot determine judicially which of the parties is right in his contention as to the validity of the assignments under which the petitioner claims.

*Petition dismissed.*

*H. T. Richardson,* for the plaintiff.

*D. Malone,* Attorney General, & *F. B. Greenhalge,* Assistant Attorney General, for the defendant.