**John N. KELLY**

v.

**Kenneth M. CURTIS, in his capacity as Governor of the State of Maine.**

Supreme Judicial Court of Maine.

Feb. 17, 1972.

Verrill, Dana, Philbrick, Putnam & Williamson by Roger A. Putnam, Portland, for plaintiff.

Beliveau & Beliveau by Severin M. Beliveau, Michael J. Gentile, Rumford, Marden, Dubord, Bernier & Chandler by Bruce W. Chandler, Waterville, Sawyer & Sawyer by Richard G. Sawyer, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

The plaintiff together with the constitutionally required number of electors pro-

posed to the 105th Legislature in regular session a bill more particularly referred to as "AN ACT Relating to Form of Ballots in General Elections" under Article IV, Part Third, Section 18 of the Constitution of Maine. The Legislature has determined this ballot reform measure to have been validly initiated, but it adjourned without day on June 24, 1971, failing during the session either to enact the initiated bill without change, or to reject it, and proposing no competing measure for submission to the people. The electors' written petitions, addressed to the Legislature and proposing the ballot reform measure, contained a request to the Governor of this State that he, by proclamation, order the proposed bill to be referred to the people at a special election to be held not less than four nor more than six months after such proclamation in accordance with the terms of said constitutional provisions. The plaintiff, by his complaint brought under Rule 80B of the Maine Rules of Civil Procedure, seeks a determination of rights and a judicial order, if necessary to implement said rights, compelling the Chief Executive of the State to comply with the constitutional mandate. The Superior Court by judgment dated February 11, 1972 entered the following order:

"WHEREFORE, IT IS ORDERED AND ADJUDGED, that the Defendant in his capacity as Governor of the State of Maine, shall, within twenty-four (24) hours of the time of the service of this Order upon his counsel, immediately issue a proclamation pursuant to Article IV, Part Third, Section 18 of the Constitution of Maine, calling and requiring a special election to be had on initiated bill 'AN ACT Relating to Form of Ballots in General Elections', said election to be called and held not less than four (4) nor more than six (6) months after the date of such proclamation."

The Governor has seasonably appealed to this Court.

Article IV, Part Third, Section 18 provides as follows:

"Section 18. The electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State or presented to either branch of the Legislature within forty-five days after the date of convening of the Legislature in regular session. Any measure thus proposed by electors, the number of which shall not be less than ten percent of the total vote for Governor cast in the last gubernatorial election preceding the filing of such petition, unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both. When there are competing bills and neither receives a majority of the votes given for or against both, the one receiving the most votes shall at the next general election to be held not less than sixty days after the first vote thereon be submitted by itself if it receives more than one-third of the votes given for and against both. If the measure initiated is enacted by the Legislature without change, it shall not go to a referendum vote unless in pursuance of a demand made in accordance with the preceding section. The Legislature may order a special election on any measure that is subject to a vote of the people. *The Governor may, and if so requested in the written petitions addressed to the Legislature, shall, by proclamation, order any measure proposed to the Legislature as herein provided, and not enacted by the Legislature without change, referred to the people at a special election to be held*

*not less than four nor more than six months after such proclamation, otherwise said measure shall be voted upon at the next general election held not less than sixty days after the recess of the Legislature, to which such measure was proposed."* (Emphasis added.)

In Farris, Attorney General, ex rel. Dorsky v. Goss, 1948, 143 Me. 227, 231, 60 A. 2d 908, 911, this Court held that the "right of the people * * * to enact legislation [reserved to the people through the direct initiative of legislation provisions of the Constitution] * * * is an absolute one and cannot be abridged directly or indirectly by any action of the Legislature."

■ We only recently said in the Opinion of the Justices, 1971, Me., 275 A. 2d 800, that a liberal construction to effectuate the purpose of the direct initiative of legislation is the standard to be used to determine the meaning of the constitutional provisions which relate to the holding of special elections for the enactment or rejection at the polls of measures initiated by the people. Although the powers of the Governor in respect thereto were not directly involved in the questions submitted to the Justices, and recognizing that advisory opinions are not necessarily binding on this Court in an adversary proceeding (Martin v. Maine Savings Bank, 1958, 154 Me. 259, 147 A.2d 131), nevertheless, we do adopt, as the law of this State under Article IV, Part Third, Section 18 of the Constitution, that once the written petitions addressed to the Legislature concerning initiated proposed legislation have requested a gubernatorial proclamation of a special election, to be held within the constitutionally defined limits, the Governor is subjected by the very terms of the Constitution to a mandatory obligation to order the special election.

We re-affirm the underlying reasons there stated for construing the constitutional language to be a mandatory rather than a discretionary obligation:

"This interpretation, derived from the literal language of Section 18, is supported by practical factors which suggest a need that the initiators of a measure should have opportunity to impose a compulsory obligation upon the Governor to order a special election within time limits other than those ordinarily operative as to general elections. Under given circumstances the people initiating a measure may believe that the issues are sufficiently complex to justify extensive opportunity for the conducting of public debate as well as to allow sufficient time for adequate education of the voters on the issues. Hence, they may wish to require a minimum of four months after the recess of the Legislature. Similarly, they may envision that a period as long as one year and a half could elapse until the next general election (should the Governor choose to refrain from calling a special election in the exercise of discretion), and the initiators might consider such extended delay unwise or otherwise prejudicial to the purposes they seek to achieve."

In said Opinion of the Justices, 1971, Me., 275 A.2d 800, we added:

"Furthermore, to prevent frustration of the broadly reserved power of the people to legislate it is implicit that the proclamation of the Governor is intended to be made within a reasonably short time after the legislative session has been adjourned without day."

■ The Governor by interrogatories has announced his intention to proclaim a special election to be held in conjunction with the general election in November, 1972. We now hold that this proposed action is forbidden by the mandate of the Constitution. Such was the import of the Opinion of the Justices, 1971, Me., 275 A. 2d 800, 804, 805.

On the date when this complaint was instituted (January 7, 1972) more than six (6) months had passed since the adjourn-

ment without day of the legislative session at which the initiative petitions were addressed to the Legislature containing a request for gubernatorial proclamation of special election. We declare as a matter of law that in the circumstances of this case a time span exceeding six (6) months cannot qualify as the reasonably short time after adjournment contemplated by the Constitution.

The Governor not having proclaimed a special election "within a reasonably short time" after adjournment as we interpret that phrase, it is now his duty to issue his proclamation immediately.[1]

■ Generally, mandamus (or its procedural equivalent) lies to compel the performance of strictly ministerial acts imposed by law upon subordinate officers of the government. If the law clothes the officer with discretion in the performance of his duties, then mandamus will not lie (Young v. Johnson, 1965, 161 Me. 64, 207 A.2d 392), except to compel the exercise of the discretionary powers upon complete refusal to act. Littlefield, Attorney General v. Newell, 1893, 85 Me. 246, 27 A. 110.

When the conduct of the Governor is in question, however, the issue is whether our governmental system, constitutionally structured to create three separate and co-ordinate branches exercising sovereign power, contemplates that the Governor of the State, insofar as he performs, or is required to perform, acts in his official capacity as the Chief Executive, may be ordered to act by the judicial branch through mandamus or equivalent judicial process. In In re Dennett, petitioner, 1851, 32 Me. 508, the plaintiff, claiming that he had been elected to the office of County Commissioner, sought a writ of mandamus from the Court to command the Governor and Council to declare him elected. The Court, however, basing its decision on the constitutional separation of powers, viewed the obligation of the Governor and Council as an official duty to be performed by the executive department, with responsibility for correct performance of its duties in the manner prescribed by the constitution, *but without responsibility to the judicial department.*

The Governor's immunity from judicial coercion by court order in the performance of his official duties, ministerial or discretionary, has never been questioned in this State since the *Dennett* decision until the present complaint was filed.

On the contrary, the principle that one co-ordinate branch of government must refrain from ordering another branch to perform its official duty has been re-affirmed. The then Justices of this Court in Opinion of the Justices, 1953, 148 Me. 404, 94 A.2d 816, indicated continued vitality of the *Dennett* principles in their answer to a senatorial inquiry. They pointed out that "[i]t is the duty of the Legislature to obey * * * [a] mandate of the Constitution", and if one legislature was in violation of its constitutional duty, the duty continued upon all subsequent legislatures to act until the constitutional command had been obeyed. They bottomed their opinion in great part upon the case of Fergus v. Marks, 1926, 321 Ill. 510, 152 N.E. 557 which in turn relied upon People ex rel. v. Dunne, 1913, 258 Ill. 441, 101 N.E. 560. In *Dunne,* the Illinois Court had denied the right of the judicial branch to compel the Governor of the State to perform any duty imposed upon him by virtue of his office, whether ministerial or discretionary.

We appreciate that there is substantial authority for a contrary rule, typified by Jenkins v. Knight, 1956, 46 Cal.2d 220, 293 P.2d 6; Blalock v. Johnston, 1936, 180 S.C. 40, 185 S.E. 51; Felix v. Government of the Virgin Islands, D.C.1958, 167 F.Supp.

---

1. In the present circumstances, the Governor is not precluded by the Constitution from proclaiming a special election to be held in conjunction with the primary election so long as it falls within a period not less than four (4) months nor more than six (6) months after such proclamation.

702, and appropriate cases cited in Annot. 105 A.L.R. 1124, at 1133–1136.

Our rationale for declining to distinguish between ministerial and discretionary acts was well stated in Rice v. Draper, 1911, 207 Mass. 577, 93 N.E. 821.

The Massachusetts Court emphasized that the principle of separation and co-equality of powers is violated by the very process of the court's attempt to evaluate the nature of the official duty as ministerial or discretionary, and coercive action by one branch of government against another would tend to create antagonism. In summation, the Court said:

"We think it would be an unfortunate rule of law that would require this court, at the request of a petitioner, to scrutinize the official conduct of the Governor, in order to determine whether certain of his acts or omissions were in matters merely ministerial, or in the exercise of executive functions which properly pertained to his office. An order under a writ of mandamus against the Governor, if he should refuse to obey it, might present the strange spectacle of a direction by the court to the executive forces of the government, to coerce and punish the chief executive officer of the state, who commands and controls the military forces that are ultimately relied upon for the maintenance of law and order. It seems better to hold that, for whatever he does officially, the Governor shall answer only to his own conscience, to the people who elected him, and in case of the possible commission of a high crime or misdemeanor, to a court of impeachment."

The *Rice* and *Dennett* position finds support in such cases as People ex rel. Broderick v. Morton, 1898, 156 N.Y. 136, 50 N. E. 791; State ex rel. v. Board of Inspec-

tors (State ex rel. Latture v. Frazier, Governor), 1905, 114 Tenn. 516, 86 S.W. 319; State ex rel. Axleroad v. Cone, 1939, 137 Fla. 496, 188 So. 93.

We conclude on balance that we should re-affirm the *Dennett* rule.

The defendant raises the issue of the standing of this plaintiff to maintain the action. We note the complaint does not allege special injury different from that incurred by any other voter.

While there may be serious doubt as to his standing (see: Weeks v. Smith, 1889, 81 Me. 538, 18 A. 325; Knight v. Thomas, 1900, 93 Me. 494, 45 A. 499; State v. Bangor and Brewer, 1903, 98 Me. 114, 133, 56 A. 589; Hamlin v. Higgins, 1907, 102 Me. 510, 67 A. 625), we need not resolve this issue since we conclude that on other grounds the plaintiff's prayer for relief must be denied.[2]

The entry will be

Appeal sustained.

---

2. The plaintiff argues the prior case law is no longer controlling by reason of the present wording of the Constitution of Maine, Article I, Section 6–A, (denial of

enjoyment of civil rights). We intimate no opinion as to the correctness of this contention.