**UNITED STATES of America,**
**Plaintiff,**

v.

**Paul O. JOHNSON, Defendant.**

**No. 5989.**

United States District Court
W. D. Missouri,
Southwestern Division.

April 5, 1968.

276

Bruce C. Houdek, U. S. Asst. Dist. Atty., Kansas City, Mo., for plaintiff.

Horace S. Haseltine, Springfield, Mo., A. L. Shortridge, Joplin, Mo., for defendant.

### MEMORANDUM AND ORDER DENYING MOTION FOR NEW TRIAL

ELMO B. HUNTER, District Judge.

At a trial held herein defendant was found guilty as charged in Counts III and IV of the indictment. Briefly stated, Count III charges defendant with violation of 18 U.S.C. § 287 (false claim)[1] and Count IV charges defendant with violation of 18 U.S.C. § 1001 (false statement or representation).[2] Defendant has filed a motion entitled "Motion for Judgment or Acquittal Notwithstanding the Verdict and, In the Alternative, For a New

---

1. "Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully * * * makes any false, fictitious or fraudulent statements or representations * * * shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Trial" (consisting of 19 pages), "Suggestions in Support of After Trial Motions" (consisting of 4 pages), and "Suggestions in Support of Defendant's After Trial Motions" (consisting of 31 pages). The "Motion For Judgment or Acquittal Notwithstanding the Verdict and, In the Alternative, For a New Trial" sets forth as grounds for the same points numbered I through XXII, some with numerous subparts. The "Suggestions in Support of After Trial Motions" submits "points and authorities" numbered I through XIV, the same bearing but little resemblance to the motion itself either in topics discussed or in the method of presentation. The "Suggestions in Support of Defendant's After Trial Motions", filed at a later date, follow the pattern used in the motion itself and, with some reframing of the issues, present the authorities relied upon. In undertaking to discuss with some clarity the various questions raised the Court has endeavored to group the points of error to some extent, and has taken up the matters in a sequence different from that presented by defendant.

Briefly stated, the government in this case alleged that defendant, a participant in the Conservation Reserve Program, in the fall of 1963 certified that he had complied with and would continue to comply with the requirements of the program and that the amount shown on the application form was the correct amount due him, when in fact he had prior thereto begun to develop a subdivision on a part of the land in the program and had made arrangements for additional development to be undertaken in the calendar year.

■■ The Court considers first the issues raised relating to the indictment and its return. Defendant contends that the indictment should be quashed because of the delay in presenting the matter to the grand jury, relying upon the case of United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). This contention is without merit. The record will demonstrate that the only attack on the indictment, and the first indication by defendant that there had been too great a delay in presenting the matter to the grand jury, was on the first day of trial, and then by bare motion only without supporting suggestions. The indictment was returned on March 11, 1967 and the counts on which defendant was found guilty relate to his activities in the latter part of 1963. The record of the trial shows that the investigation of this case required considerable time due to no small extent to the nature of defendant's business operations concerning the land in question during the time covered by the indictment. It was not a simple case to develop. Further, the exhibits attached to the present motion by defendant demonstrate the government's candor in this regard in advising defendant's attorney as early as May of 1966 of the government's intention to present the matter to the grand jury. The teachings of the Ewell case, supra, actually support the government in this case. The Court there stated, supra at 122, 86 S.Ct. at 777 "We note, first, * * * that the new indictments * * * were brought well within the applicable statute of limitations, which is usually considered the primary guarantee against bringing overly stale criminal charges." Such is true in the case at bar, with the additional factor that defendant was advised well in advance of indictment that the government intended to seek such indictment. The Court in the Ewell case also observed that the right to a speedy trial is necessarily relative, and is consistent with delays and depends upon the circumstances in each case. While it secures rights to a defendant, "it does not preclude the rights of the public." United States v. Ewell, supra, at 120, 86 S.Ct. at 776. There being no evidence of intentional or vexatious delay or unreasonable harassment of defendant, he is in no position to claim surprise or prejudice under the circumstances of this case, United States v. Ewell, supra, Foley v. United States, 290 F.2d 562 (8th Cir. 1961), cert. den. 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88 (1961).

■ Defendant's contention that the Court erred in refusing to grant its mo-

tion to require the government to elect between Counts III and IV is without merit. "The test to be applied to determine whether there are two offenses or only one is whether proof of any additional fact, not constituting an element of one of the offenses, is required to sustain a conviction on the other," Cardarella v. United States, 375 F.2d 222, 225 (8th Cir. 1967), cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176 (1962). See also Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616 (1926). Separate offenses may be committed in the same transaction where the elements are different and the proof required for conviction is different, Blockburger v. United States, supra. Briefly stated, the elements differ in that the offense described in § 287 (Count III) requires that a claim (for money or property) be presented to a department or agency of the United States, upon or against the United States, while the offense described in § 1001 (Count IV) requires only a statement or representation (need not involve money or property) within the jurisdiction of any department or agency of the United States. Moreover, the Congressional intent on this matter is clearly to treat these as separate and distinct offenses, for in 1940 section 80 of Title 18, U.S.C., which referred to both claims and statements, was divided into the two parts, present sections 287 and 1001.

In an even broader attack on the indictment defendant contends that it was the intent of Congress that the civil penalties provided in the Soil Bank Act be the only penalties to which defendant could be subjected and that sections 287 and 1001 of Title 18 can have no application to the facts of this case. There is no merit in this contention. The very purpose of sections 287 and 1001 is to protect the government against those who would cheat or mislead it in the administration of its programs, United

States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205 (1937), United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941). The mere fact that the Soil Bank Act makes no additional provision by way of criminal sanctions does not render ineffective these sections of the criminal code or indicate that Congress intended to restrict their application, United States v. Bramblett, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955). Sections 287 and 1001 are applicable to the facts of this case and the indictment pursuant to those sections is in accordance with law. The Soil Bank cases upon which defendant relies are not on point in that they are actions to review the civil penalties assessed against participants in the program and do not in any way touch upon the situation presented here. Nor does the indictment and conviction thereunder coupled with the attempt by the government to assess civil penalties [3] subject defendant to cruel and unusual punishment, to excessive fines, nor does it constitute a Bill of Attainder as defendant would suggest, without referring to any authorities. The Court is not aware of any rule of law that would prevent the government from availing itself of its civil remedies as well as enforcing the criminal law.

Defendant contends in a rather general way that 18 U.S.C. §§ 287 and 1001 are unconstitutionally vague and indefinite, and more particularly, that as applied to the facts of this case are unconstitutionally vague and indefinite. Such attack on the statutes themselves has been without success, United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941), United States v. Houcks, 224 F.Supp. 778 (W.D.Mo.1963). As applied to the facts of this case, the attack is also without merit. The statement which the government alleges defendant falsely made is as follows:

I hereby certify that for the program year indicated above I have complied

---

3. The civil case is still pending and at this point neither the Court nor the parties are in a position to predict its outcome.

with and will comply with all the requirements under the Conservation Reserve Program and that the gross payment shown hereon to be due me, is correct * * *.

Defendant contends that the above statement is merely a conclusion of law and a legal opinion. The term "comply" is defined in Webster's Third International Dictionary (unabridged) as " * * * to complete, accomplish, perform what is due * * * conform or adapt one's actions (as to another's wishes) * * *." The above statement is not a mere conclusion of law or legal opinion. It is a statement in which defendant asserts he has done certain things and will continue to do certain things. The evidence shows defendant was familiar with the important requirements of the program.[4] It is not merely a statement that the law is thus and so, or that the law requires such and such. See Todorow v. United States, 173 F.2d 439 (9th Cir. 1949), cert. den. 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733 (1949), wherein the false statement under a section 1001 prosecution was the assertion that the truck (surplus property of the United States) was to be for the applicant's own use, when in fact it was to be for the use of another. McCoy v. United States, 169 F.2d 776 (4th Cir. 1948), cert. den. 335 U.S. 898, 69 S.Ct. 298, 93 L.Ed. 433 (1948), is to the same effect. In United States v. Uram, 148 F.2d 187, 188 (2nd Cir. 1945), in a prosecution under the predecessor of sections 287 and 1001, the defendant was charged with having caused a loan to be made "which was to be expended on the home of Mr. and Mrs. Royal V. Campbell and more particularly in reroofing the building and repairing the sidewalks and for no other purpose; [but] in truth and in fact as defendants well knew, the representations of the borrowers were false and the moneys received from said loan was [sic] not expended on the roof or sidewalk but for personal and private purposes in no way

related to the aforesaid premises or on the said proposed improvements thereon." To the contention that the indictment was invalid because based on a statement of mere possible future occurrence, the court stated, at 189, "it is an allegation of a present statement and the assertion of existing intent, and promise, to use the money for the specific purpose of" repairs. Likewise, see Russell v. United States, 222 F.2d 197 (5th Cir. 1955), where the false statement which defendant caused to be made, and which was held sufficient under section 1001, was the phrase "purchase of home" contained in applications for veteran's home loans, where the facts of the case showed the loan guaranties were not in fact for the benefit of the veteran applicants, but rather for the benefit of defendant. United States v. Rubinstein, 166 F.2d 249 (2d Cir. 1948), cert. den. 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146, (1948), a prosecution under the predecessor of 50 U.S.C. App. § 462 for making false statements to the draft board, involved statements to the effect that defendant's functions with his employer were such that the successful continuance of the operations of the company depended upon his remaining with the company, and that it would be impossible to replace him without seriously hampering the operation of the company. The court, at 255, stated, "even if these statements were but expressions of opinion, pertaining to future matters only, the making of them implied that the makers believed them to be true. If this belief were not honestly entertained, therefore, the statements contained a misrepresentation of present fact."

United States v. Outer Harbor Dock & Wharf Company, 124 F.Supp. 337 (S.D. Cal.1954), cited by defendant, contains a good illustration of what a conclusion of law or mere legal opinion is really like and demonstrates that much more than that is involved in the case at bar. The statement alleged to have been made

---

4. The evidence shows such important requirements as (1) not breaking the vegetative cover and (2) not harvesting a crop of hay on the land in the program were those which defendant had knowledge of and violated.

in the Outer Harbor Dock case, supra at 340, was "the Company 'was obligated under its lease with the City * * * to remove warehouse buildings and installations * * *.' " Another case relied upon by defendant is Jacobs v. United States, 359 F.2d 960, 965, (8th Cir. 1966) which hardly supports the present contentions in that the statements allegedly made in that case were "the services for which payment is claimed have been performed in conformity with the provisions of my storage warehousing agreement with the" Commodity Credit Corporation. The other cases cited by defendant are not in point.

■■■■■ Defendant further contends that the conviction cannot stand because the certification required of defendant before he would receive his payment did not conform to the statute in that the statute provides, 7 U.S.C. § 1804, "payment * * * may be made upon the certificate of the claimant, in such form as the Secretary may prescribe, that he has *complied with all requirements for such payment * * *" (emphasis supplied) while the certification which defendant signed provides he has "complied with and will comply with *all the requirements under the Conservation Reserve Program * * *"* (emphasis supplied). Such contention is without merit. In the first place, defendant is in no position to assert the operations of the Conservation Reserve Program are illegal or unconstitutional in view of the fact he voluntarily put himself in a position to obtain the benefits from said program (and has obtained them), and when he has under that program attempted to mislead and cheat the government, Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1937), United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205 (1937), Humble Oil and Refining Company v.

United States, 198 F.2d 753 (10th Cir. 1952), cert. den. 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952). Secondly, the statute permits the Secretary to prescribe the form to be used and there is no showing that the Secretary exceeded his authority in prescribing the form used for the Conservation Reserve Program, 7 U.S.C. §§ 1831–1837.[5]

■■■■■ Much along the same lines, defendant makes reference to "Regulation 57" (government's exhibit 58, paragraph 57 from the county committee conservation reserve handbook), contending that the same is unconstitutional in that it gives the committee arbitrary power to grant or refuse permission to take land out of the Conservation Reserve Program. That paragraph provides in pertinent part:

> Contracts shall be modified to remove land devoted to nonagricultural use. * * * If the county committee gives prior approval for the nonagricultural use, the destruction or failure to maintain the conservation use on such land shall not be a violation of the contract.

What has been stated above with regard to defendant's lack of standing to now assert the program or provisions thereof are illegal applies to this contention. Further, the record indicates that the provision quoted above was promulgated pursuant to Regulation 485.511 in due course and in proper manner. Perhaps even more importantly, the record clearly demonstrates that defendant made no effort to bring himself within the terms of that paragraph; he made no attempt to obtain prior approval.

■■■■■ Defendant contends that the certification could not be considered a perversion of any function of the committee, the contract, or the Conservation Reserve Program; the certification could not be considered material; and it had

---

5. Defendant makes much in his brief of 7 U.S.C. § 1823(b) and its provision that when the Secretary determines the producer has complied with the *acreage reduction requirements* he shall be paid. Suffice it to say that section 1823(b) deals with the "Acreage Reserve Program" and defendant was in the "Conservation Reserve Program," the latter program requiring more than merely taking land out of production.

no natural tendency to influence. As to its materiality, there is no dispute but that defendant would not have received his payment had he not made the certification as the statute and regulations required. It is very material. As to its natural tendency to influence, or to pervert any function of the committee, contract, or program, the members of the county committee testified that had they known the defendant was in the process of developing the acreage on which he made the claim, and in support of which the statement was made, they would not have made the full payment. The members of the committee testified that during the late summer of the year the various land in the Conservation Reserve Program would be inspected for compliance, but that they also placed reliance on the certification of the participant. Congress, in establishing the program, recognized the need to rely upon the representations of the participants in order to make the program functional and expressly provided for the certification of compliance. Defendant cannot escape the consequences of his acts by arguing that the members of the committee should have made more inspections of his property in the program and should not have relied upon his representations. The jury passed upon these contentions and found against defendant under the Court's instructions. In support of the contentions that the statement was not material, that it would not have a natural tendency to influence, and could not be considered a perversion of the Conservation Reserve Program, defendant relies on the following cases: United States v. Maxwell, 278 F.2d 206 (8th Cir. 1960); Shay v. Agricultural Stabilization and Conservation, State Committee for Arizona, 299 F.2d 516 (9th Cir. 1962); Friedman v. United States, 374 F.2d 363 (8th Cir. 1967); Bartlett and Company, Grain v. United States, 353 F.2d 338 (10th Cir. 1965); Paternostro v. United States, 311 F.2d 298 (5th Cir. 1962); United States v. Diogo, 320 F.2d 898 (2d Cir. 1963); and Jacobs v. United States, 359 F.2d 960 (8th Cir. 1966). These cases have all been carefully considered by the Court and have been found to be not in point in view of the facts of the case at bar. The Maxwell and Shay cases are civil cases involving reviews of agency determinations that Soil Bank Contracts had been violated and that the same should be terminated for that reason. Each of the cases acknowledged the statutory provision that only a violation of a substantial nature will warrant termination of the contract, 7 U.S.C. § 1831(a) (6) (A). 7 U.S.C. § 1831(a) (6) (B) provides other civil remedies in the event there has been a violation of the contract which is of such a nature as not to warrant termination.

The other cases do involve criminal actions under the false statement and false claims statutes, but a brief recitation of the facts and issues involved in each will demonstrate their inapplicability to the facts of this case. The Friedman case involved the giving of a false statement to the Federal Bureau of Investigation regarding a beating which the defendant had purportedly received at the hands of a state highway patrol officer. In setting forth the issue on which the decision turned the court, 374 F.2d at 365, stated: "This question [whether the indictment alleges a violation of section 1001] is resolved by determining if the giving of false information to the F.B.I. relative to a violation of the criminal law is a 'matter within the jurisdiction of any department or agency of the [government].'" The Court concluded that the matter was not within the "jurisdiction" of the F.B.I., giving that term a restrictive reading. In the case at bar the matter was within the jurisdiction of a department or agency of the United States, as it discussed at a later point in this opinion.

The Bartlett case involved a statement by defendant to the Commodity Credit Corporation concerning the method under which grain was received in an effort to obtain an "in store" allowance. The government proved in that case that the statement was false and that defendant intended to induce the Commodity Credit

Corporation to pay the "in store" allowance, but the government inadvertently proved an incompensable "F.O.B. bin site" transaction, not an "in store" transaction. Under such proof defendant's representations became immaterial for no "in store" allowance is ever paid for a "F.O.B. bin site" transaction. In the case at bar the government proved that defendant would have been entitled to the full payment if his certification had been true and he had continued to comply, and that he was in fact given his full payment after he made the certification and prior to the time it was discovered his certification was false.

The Paternostro case involved negative answers given by defendant in response to questions propounded by an I.R.S. agent. In holding that such "mere negative answers" would not be considered "statements" within the meaning of section 1001, the court stated, quoting in part from other opinions, 311 F.2d at 303–305:

> "While the Special Agent may have been disappointed that defendant would not truthfully answer himself into a felony conviction, we fail to see that his investigative function was in any way perverted. The only possible effect of exculpatory denials however false, received from a suspect such as defendant is to stimulate the agent to carry out his function."

> "The conduct Congress intended to prevent by § 1001, is the willful submission to federal agencies of false statements calculated to induce agency reliance or action, irrespective of whether favorable agency action has actually resulted."

> Appellant in the case at bar made no statement relating to any claim on his behalf against the United States or any agency thereof; he was not seeking to obtain or retain any official position or employment in any agency or department * * *; and he did not aggressively and deliberately initiate any positive or affirmative statement calculated to pervert the legitimate functions of Government.

The false statement in the certification made by defendant was neither a merely negative response nor an exculpatory denial.

United States v. Diogo, supra, involved an alleged misrepresentation on the part of defendant concerning his marital status. Defendant, at the pertinent time, had stated he was married to an American citizen. The government's contention was that the marriage was merely a sham undertaken to keep defendant, an alien, from being deported. Pointing out that the charge of false representations requires proof of actual falsity, the court held that the government had failed, as a matter of law, to sustain its burden of proving that the marriage was void at the time defendant made the representation concerning his marital status. In the case at bar, the government introduced abundant evidence of the falsity of defendant's certification.

The Jacobs case involved certifications to the Commodity Credit Corporation by defendant, a warehouseman, concerning grain storage and services in regard thereto. As to the first five counts in that case the court concluded, "the only reasonable interpretation of the storage agreement, the commodity delivery notices, and the warehouse receipts precludes the attribution of falsity to the notices and receipts." There being no proof of falsity on those counts because defendant was permitted under the agreement to commingle the grain the court reversed the conviction on those counts. On the remaining counts the court found that the government failed to prove defendant had knowledge at the time he certified the invoices that he was not entitled to receive the charges in question. In the case at bar the evidence showed defendant had been thoroughly advised of the terms of his Conservation Reserve Contract (see government's exhibit 9) at the time he put his land into the program, and that in the two years prior to 1963 as well as in October of 1963 defendant had been specifically told in some detail by the members of the county committee

that he was not to take land out of the program by developing it, and that he was not to tear up or break the cover on the land. Taking the evidence favorable to the government, as the Court must do in this motion for new trial, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it cannot be said that defendant lacked the requisite knowledge at the time he made the certification.

■ Defendant contends that a literal application of sections 287 and 1001 deprives defendant of due process of law in that the form on which defendant made his certification "contains no warning that the producer by certifying compliance for payment will subject himself to criminal or civil penalties unless he is in 100% compliance with all requirements." The Court is aware of no ruling which would require a warning on the certification form that the applicant may be subject to criminal prosecution if he lies in his certification, nor is the need for such a warning apparent. Certainly the government is entitled to expect the applicant will act honestly in making his certification. Fraud, deceit and lying are not vague crimes for which a person must be given special notice and warning. As to the 100% compliance remark, which appears elsewhere in the contentions as well as here, the simple answer to that is the Court instructed the jury in pertinent part as to the elements of the false claim charge:

* * * That the claim was false, fictitious, and fraudulent, *and material* * * * (emphasis supplied) ;

and as to the elements of the false statement charge:

* * * That the statement was false, fictitious, and fraudulent, *and material.* * * * That the statement was *made on a material matter* * * * (emphasis supplied).*

Furthermore, the record will demonstrate that counsel for defendant fully argued

defendant's theory that defendant's actions were not material or substantial deviations from the contract, that they were merely trivial, and that the statement was not material. Additionally, instruction number D informed the jury that defendant was required to maintain approved cover on the land "in accordance with good farming practice." No where was the jury advised defendant was required to be in 100% compliance with the terms of the regulations. Defendant's contention that his prosecution under sections 287 and 1001 violate due process of law is without merit.

■ Likewise, defendant's statement that application of the criminal provisions against false claims and false statements will defeat the purpose of the Soil Bank Act is without merit. Congress has required that the applicant make certification of compliance, and there is nothing to indicate there is less need for government to be protected against fraud and deceit in the Soil Bank Program than in other programs it administers. See for example, United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205 (1937), where the criminal sanctions against false statements were applied in a case under the Agricultural Adjustment Act. Far from defeating the purpose of the Act, the criminal provisions may well discourage those who are in the program from trying to cheat the government.

■ Defendant's contention that the statement was not on a matter within the jurisdiction of any department or agency of the United States is without merit. On this point the Court found, and the evidence supports such finding, that the contract under which the payments were made was between the Secretary of Agriculture and the defendant; and the Secretary of Agriculture through the county committee had the power and authority to act upon the claim made for annual payment. Counsel for defendant

* Although not in the record, the Court, prior to closing argument, advised counsel for defendant the instructions would require that the statement be material and counsel fully argued this.

agreed at the time the instructions were prepared that the Secretary of Agriculture, the Department of Agriculture, the Agricultural Stabilization and Conservation Service, the Green Agricultural Stabilization and Conservation County Committee, the Missouri Agricultural Stabilization and Conservation State Committee, and the Commodity Credit Corporation (which the evidence showed issued the payment to defendant) are governmental units established by Congress for the purpose of carrying out federal farm programs with public funds. The statute, 7 U.S.C. § 1805 expressly provides that the county committee shall be used in administering the Soil Bank Act. Clearly the statement was "in any matter within the jurisdiction of any department or agency of the United States" as that language is used in section 1001, United States v. Rainwater, 244 F.2d 27 affirmed, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996 (1957) (8th Cir. 1957).

■ Defendant contends that he could not cheat the government out of anything, relying upon Regulation 750.-513(b) which provides:

> Notwithstanding any other provision of this subparagraph, (i) the destruction of the vegetative cover during the last six months of the contract period for the purpose of planting a crop which matures for harvest in a later year or preparing the land therefor, or (ii) the destruction of the vegetative cover during the last year of the contract period for the purpose of carrying out summer fallow operations, shall not be considered a violation of the contract.

Subject to the above quoted exception, the same regulation required that the producer agree to establish and maintain in accordance with good farming practice an approved vegetative cover or other approved conservation practices as specified in the contract. The answer to this contention is two-fold. First, defendant's contract was for a ten year period, 1959 through 1969, so any acts of destroying the cover in 1963 would not, of course, be "during the last six months of the contract period." Secondly, it does not appear that constructing roads, sewer systems, houses and the like is within the exception permitting breaking the cover in preparation for fall planting of a crop which matures in the following year. Defendant's reliance on Regulation 750.513(b) is misplaced.

■ Defendant contends that during the course of trial the Court erred in refusing to permit defendant's counsel to inquire of the government's witnesses concerning the pending civil action on file. Defendant contends such examination would have been proper to show bias and prejudice, relying upon the case of Villaroman v. United States, 87 U.S.App.D.C. 240, 184 F.2d 261, 21 A.L.R.2d 1074, (1950). Defendant's counsel were not prevented from inquiring as to any personal bias or prejudice of the witnesses called by the government, and the record will reflect that wide latitude was accorded counsel for defendant in this regard. However, as to the pending civil suit, in which the United States, not the individual witnesses called by the government, is the party, counsel's statements to the court throughout the trial made it abundantly clear that any inquiry into the pending civil case would in fact have been for the purpose of putting before the jury the fact that the government was attempting to recover civil penalties and recover the money paid under the contract in an effort to make the jury believe defendant would be sufficiently punished by the civil action and should not be found guilty in the criminal action and not for legitimate impeachment purposes. Such a purpose would have been completely improper and would have resulted in confusing the jury and prejudicing the government which is also entitled to a fair trial. The Villaroman case is, of course, distinguishable on the facts. There the prosecuting witness (in an assault case) personally had pending a civil suit for damages against the defendant, alleging $50,000 damages for personal injuries.

Here the various witnesses called by the government have no personal interest in the outcome of the pending civil case, are not parties to such case, and have had no control over it, i.e., whether to bring it or maintain it. Defendant has suffered no prejudice from the Court's ruling on this point, and its contention of error is without merit.

■ Defendant contends that the government failed to show the claim was false on the date made and further that the Court erred in permitting the government to show acts of defendant which occurred subsequent to October 8, 1963. It would serve no useful purpose to recite in detail the evidence, which is extensive, showing that at the time defendant made the claim it was false and he so knew. Suffice it to say that prior to October 8, 1963, rather extensive development had been commenced on the property by defendant or with his knowledge and consent, including, installation of gas and water laterals, and construction of sanitary sewers.[6] Also prior to that time defendant had entered into contracts for further and extensive development of the property, such contracts contemplating the construction of streets, storm sewers, and additional gas and water laterals. Prior to October 8, 1963, defendant had entered into a contract with the Gibsons to sell a portion of the property to the Gibsons, said contract calling for the Gibsons to develop the property. Evidence of acts of defendant, or with his knowledge and consent, occurring after October 8, 1963, was relevant and material particularly on the issue of his intent as of the time he made the statement, and this especially in light of the contents of the statement that he had "complied with and will comply with" the requirements. This evidence showed that work was done in 1963 under the contracts which defendant had entered into prior to October 8, 1963, and that other contracts were entered into by defendant or with his knowledge and consent shortly thereafter which also resulted in development work on the land in 1963.

■ Defendant contends generally that there was no evidence to support a conviction on Counts III and IV. What has been stated above with regard to the evidence in the case sufficiently indicates that, contrary to defendant's contention, there was sufficient evidence to support a conviction on each count. A detailing of the evidence would serve no useful purpose.

■ Defendant contends that the Court's instructions permitted a finding of guilty if the statement was false without requiring the falsity to be material. Such contention is without merit. As pointed out above the Court's instructions on this matter expressly provided that the statement be "material" and that it be "made on a material matter." The Court further instructed the jury:

> * * * an essential element of the offense of making a false, fictitious and fraudulent statement as charged in [Count IV] of the Indictment is that the statement be "material." In determining whether such a statement is material, the test is whether it has a natural tendency to influence or was capable of influencing agency action * * *. If you find beyond a reasonable doubt that defendant's statement * * * had a natural tendency to influence or was capable of influencing the agency to which it was made * * * to pay defendant on the basis of his statement, then you should find that such statement was material.

The Court's instructions as to "materiality" of the alleged false statement are in accord with those used in other cases involving section 1001, Blake v. United States, 323 F.2d 245 (8 Cir. 1963), Gonzales v. United States, 286 F.2d 118 (10th Cir. 1960), and cases cited therein. Defendant's counsel in their reliance

6. See the testimony of Gerald Tolar, gas and water laterals inspector, Ray Butrick, sanitary sewers inspector.

upon the Maxwell and Shay cases, supra, lose sight of the fact that this is a criminal case brought under sections 287 and 1001 of Title 18, and in this action the Court is obliged to apply the terms of the criminal law and not merely general principles of contract law.

█ Defendant contends the Court erred in re-reading the indictment to the jury and contends it was prejudicial to him. The record will demonstrate that on numerous occasions during the course of the trial counsel for defendant endeavored to confuse the jury as to the issues of the case, indicating that this case involved something other than criminal charges for making a false claim and false statement. It will further show that the Court was most lenient with counsel on this matter. However, in order to assure a fair trial for the government and to remove some of the confusion which counsel for defendant had put into the case, on the occasion referred to the Court re-read the indictment to the jury so that they would clearly understand the charges being tried in this case. Prior to such reading the Court admonished the jury, as it had at the outset of the trial, that the indictment was no evidence of defendant's guilt. Defendant was not prejudiced, the re-reading was not error, and the cases cited by defendant are not in point with the facts of this case.

█ Defendant contends that in instructing the jury the Court did not specify any particular statement which defendant was alleged to have made, and did not require that the false statement be the one charged in the indictment. This contention is without merit. The record will demonstrate that no such objection was made at the time the instructions were prepared and given, nor did counsel for defendant suggest that more specification as to the statement was needed in the instructions as prepared. The record will show that although counsel for defendant prepared no instructions for the Court's assistance on this matter, the Court gave them full opportunity to examine and criticize those prepared by the Court, and on a number of occasions modified them to suit defendant's counsel where criticisms were made. The Court on two occasions read the indictment to the jury explaining that the indictment contained the charges brought by the government, and the indictment clearly sets forth the statement relied upon in Count IV. The evidence of the government focused throughout the trial on the certification containing the false statement, and there was no indication that the government was relying upon or attempting to prove a different statement. The Court's instructions specifically referred to the pertinent Count of the indictment, Count IV, and more specifically stated:

* * * If you find beyond a reasonable doubt that defendant's statement to the effect that he had complied with and will comply with all the requirements under the Conservation Reserve Program, in the years 1962 and 1963, and that the gross payment shown thereon to be due him is correct, had a natural tendency to influence or was capable of influencing agency action * * * to pay defendant on the basis of his statement, then you should find that such statement was material.

The record clearly shows that there was no confusion as to what statement the jury was required to find was false in order to convict defendant. The Court has fully and carefully considered the other claims of error raised by defendant, not specifically discussed above, and has found them to be totally lacking in merit and further discussion at this point would serve no useful purpose. ·

Each and every claim of error raised by defendant having been found to be without merit, defendant's motion for new trial or for a judgment of acquittal is hereby overruled and denied.

It is so ordered.