STATE *ex rel.* JOHN H. KELLY, *as Treasurer, etc.*

*v.*

ARCH A. MOORE, JR., *Governor, etc.*

(No. 13345)

Submitted April 24, 1973.        Decided June 5, 1973.

Rehearing Denied June 22, 1973.

*Leo Catsonis,* for relator.

*Campbell, Love, Woodroe & Kizer, Charles M. Love, Willard A. Sullivan, Jr.,* for respondent.

NEELY, JUDGE:

This is an action in mandamus brought by the Honorable John H. Kelly, Treasurer of the State of West Virginia, to require His Excellency, the Governor of the State of West Virginia, Arch A. Moore, Jr., to transfer certain federal revenue sharing funds to the custody of the State treasurer.

In December 1972 and January 1973 the State of West Virginia received twenty-two million seven hundred ninety-two thousand four hundred forty-two dollars ($22,792,442) of federal funds pursuant to Public Law 92-512, 31 *U.S.C.* 1221 *et seq.,* 86 Stat. 919 (1972) more commonly known as the Federal Revenue Sharing Act. Shortly after receipt of the checks, payable to "The State of West Virginia, Arch A. Moore, Jr., Governor," the governor deposited eleven million five hundred three thousand five hundred fifty-seven dollars ($11,503,557) in the Charleston National Bank and eleven million two hundred eighty-eight thousand eight hundred eighty-five dollars ($11,288,885) in the First Huntington National Bank at five and one-half percent (5.5%) and six and one-quarter percent (6.25%) per annum interest respectively. The deposits were received for the State of West Virginia, and time certificates were issued due six months after deposit in the name of the State of West Virginia and the respondent Governor.

In a letter dated January 15, 1973, the respondent Governor informed the petitioner that respondent was transmitting "authority" for the moneys to petitioner. This letter also directed that the funds be held in separate and segregated accounts in the treasury. Accordingly, by letters dated January 17, 1973, petitioner advised the banks of the respondent's letter and requested that the certificates of deposit be properly endorsed and made payable to the "State of West Virginia, John H. Kelly, Treasurer," or that new certificates of deposit be issued payable to the "State of West Virginia, John H. Kelly, Treasurer." The banks advised petitioner that the existing certificates must be properly endorsed by the respondent and made payable to the "State of West Virginia, John H. Kelly, Treasurer." Petitioner informed respondent of the steps necessary to effect the transfer of the funds, but the respondent, even after a second request on January 30, 1973, refused to execute the required endorsements on the certificates of deposit. Therefore, on March 6, 1973, a petition for a writ of mandamus was filed in this Court, and on March 12, 1973, this Court issued a rule to show cause why respondent should not be compelled to transfer custody of the revenue sharing funds to the State treasurer.

The State and Local Assistance Act of 1972, commonly called the Federal Revenue Sharing Act, allocates federal revenues to state and local governments for specific priority purposes, among which are included public safety, environmental protection, public transportation, health, recreation, libraries, social services for the poor and aged, financial administration, and certain capital expenditures authorized by law. Public Law 92-512, Sec. 103, 31 *U.S.C.* 1222, 86 *Stat.* 919. The Federal Revenue Sharing Act also prohibits state and local governments from using the revenue sharing funds as matching funds for federal grants which require state or local government contributions. Public Law 92-512, Sec. 104, 31 *U.S.C.* 1223, 86 *Stat.* 920. Further, the act contains provisions

which prohibit discrimination, protect wages, and regulate auditing and accounting procedures.

On February 21, 1973, after all the subject funds were received by the respondent, and after the respondent deposited the funds with the two banks, the respondent as chief executive officer of the State of West Virginia, signed an assurance to the Secretary of the Treasury, which assured the Secretary that West Virginia would comply with the restrictions on the use of the moneys imposed by the Federal Revenue Sharing Act.

Respondent argues that because he must give assurances to the Secretary of the Treasury that revenue sharing funds will be used in accordance with the limitations set forth in Public Law 92-512, he must maintain some minimal control over the funds. He further alleges that by virtue of 18 *U.S.C.* 1001 he is subject to criminal and civil penalties for any misappropriation of the funds which may occur. 18 *U.S.C.* 1001 says:

> "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The primary purpose of 18 *U.S.C.* 1001 is to curtail the flow of intentionally false information to the federal government. *Friedman v. U.S.,* 374 F.2d 363 (C.A. 8 1967); *U.S. v. Johnson,* 284 F. Supp. 273 (D.C. Mo. 1968), *affirmed* 410 F.2d 38 (C.A. 8), *cert. denied,* 396 U.S. 822; *U.S. v. Bedore,* 455 F.2d 1109 (C.A. 9 1972). It is apparent from the language of this statute that violation requires both knowledge and willfulness, and that the statute does not contemplate conviction for errors in judgment, misconstruction of the law, or negligent accounting for the

funds. Absent an intent by the governor to misappropriate the revenue sharing funds, the governor adequately discharges his obligation by depositing the funds in the treasury of the State of West Virginia to be administered in accordance with the provisions applying to other State money.

The respondent argues that under Article VI, Section 2, *Constitution of the United States,* federal law supersedes state law and, therefore, these funds must be controlled in the manner prescribed by Congress, rather than by the procedures for financial management established by the State Legislature and set forth in the *Code of West Virginia.*

We agree that if Congress had chosen a different method than the one established by the *Code of West Virginia* for the management of revenue sharing funds, the federal method would control. However, Public Law 92-512 does not require the respondent, as the chief executive officer of the State, to manage or control the funds. The Federal Revenue Sharing Act is silent on the matter of custody of the funds upon initial receipt; however, it specifically provides that the state receiving the funds shall "provide for the expenditure of amounts received * * * only in accordance with the laws and procedures applicable to the expenditure of its own revenues * * * ." Public Law 92-512, Section 123 (a) (4), 31 *U.S.C.* 1243, 86 *Stat.* 932. Accordingly we hold that the federal law itself mandates that the funds be administered in accord with the procedures established for the management of State funds.

Specific provisions in the *Code of West Virginia* which establish the statutory scheme for State financial management clearly mandate that the petitioner, as Treasurer of the State of West Virginia have custody of the funds which are the subject of this litigation.

Chapter 12, Article 2, Section 2 of the *Code of West Virginia,* 1931, as amended, provides in pertinent part:

"All officials and employees of the State authorized by statute to accept moneys due the

State of West Virginia shall keep a daily itemized record of such moneys so received for deposit in the state treasury and shall deposit promptly with the state treasurer all moneys received or collected by them for or on behalf of the State for any purpose whatsoever. When so paid, such moneys shall be credited to the state fund and treated by the auditor and treasurer as part of the general revenue of the State, and shall not be used for any purpose whatsoever unless and until authorized and directed by the legislature, except the following funds:

"(a) All moneys received out of appropriations made by the Congress of the United States; * * * .

"All moneys, excepted as aforesaid, shall be paid into the state treasury in the same manner as collections not so excepted, and shall be carried in separate accounts to be used and expended only for the purposes for which the same are authorized to be collected by law. The gross amount collected in all cases shall be paid into the state treasury, and commissions, costs and expenses of collection authorized by general law to be paid out of the gross collection are hereby authorized to be paid out of the moneys collected and paid into the state treasury in the same manner as other payments are made from the state treasury. * * * ."

The money in question received under Public Law 92-512 most certainly falls within the category set forth in *Code* 12-2-2 (a). The revenue sharing funds were moneys received out of appropriations made by the Congress of the United States.

In addition, Chapter 12, Article 5, Section 2 of the *Code of West Virginia,* 1931, provides in relevant part:

"The treasurer of this State, unless otherwise expressly provided by law, shall be custodian of all securities belonging to the State of West Virginia or by law required to be deposited with the State or held in legal custody by the State, and all departments of this State, commissioners or agents of the State, who hold any such securities, shall transfer and deliver the same to

> the state treasurer to be kept and held by him as legal custodian thereof until released in the manner provided by law."

The *Code* unequivocally requires the respondent to "deposit promptly with the state treasurer all moneys received or collected by [him] for or on behalf of the State for any purpose whatsoever." *Code* 12-2-2. The respondent as an agent of the State in receiving the certificates of deposit from the two banks must adhere to the requirements of *Code* 12-5-2 and "transfer and deliver the same to the state treasurer," which we hold also contemplates proper endorsement.

Petitioner's brief refers the Court's attention to Chapter 12, Article 1, Section 5 of the *Code of West Virginia,* 1931, as amended, which requires that "certificates of deposit may be purchased by the state treasurer only with the approval of the board of public works." In this case the petitioner did not cause the certificates of deposit to be purchased and, therefore, the approval by the board of public works could not be obtained. Under the facts of this case we do not believe that *Code* 12-1-5 requires the withdrawal of the subject funds for lack of such board approval before the date of maturity of the certificates of deposit. The intent of the legislature is to conserve state funds, and in this case that purpose is best served by holding the certificates until maturity to insure that the State will receive the full amount of payable interest.

Accordingly the respondent is directed to endorse the certificates of deposit to the petitioner, and further rule that the petitioner may hold the certificates of deposit until maturity, as it appears that the clear intent of *Code* 12-1-5 is to preserve certificates of deposit until maturity, except in the event of an emergency.

Accordingly the writ of mandamus prayed for is granted.

*Writ granted.*