STATE *ex rel.* WILLIAM T. BROTHERTON, JR., *etc., et al*

*v.*

ARCH A. MOORE, JR., *Governor*

*of the State of West Virginia*

(No. 13762)

Decided December 14, 1976.

*Jack M. McCarty and Victor A. Barone* for petitioners.

*Kay, Casto & Chaney, John S. Haight, Michael T. Chaney and Don R. Sensabaugh* for respondent.

FLOWERS, JUSTICE:

This mandamus proceeding was instituted by William T. Brotherton, Jr., and Lewis N. McManus, in their respective capacities as President of the Senate and Speaker of the House of Delegates and in their individual capacities as citizens and taxpayers, and by the Joint Committee on Government and Finance of the Legislature of West Virginia. The relators seek to compel the respondent, Arch A. Moore, Jr., Governor of the State of West Virginia, to fill a vacancy in the office of superintendent of the West Virginia Industrial Home for Girls and to submit the name of the nominee to the Senate for its consideration.

A vacancy was created in that office on August 31, 1974, when the incumbent superintendent, Betty Lou Bambrick, was forced to resign. The United States Civil Service Commission had ordered that Miss Bambrick be dismissed from her post for a violation of the federal Hatch Act. The respondent admits that a vacancy was

created and that the vacancy has not been filled. In the interim the responsibilities of the office have been discharged by various "acting superintendents," including within the last year Miss Bambrick, now Mrs. Betty Lou Tompkins. Mrs. Tompkins was returned to the payroll of the institution on April 12, 1976.

The relators by brief and pleading assert that Mrs. Tompkins is serving and being compensated for serving in contravention of the laws of this State. By their choice of parties to the suit, however, the relators have excluded from our consideration the legal status of Mrs. Tompkins. Since Mrs. Tompkins is not a party to these proceedings, we cannot determine any right or title she may have in the office. *State ex rel. Wayne v. Sims*, 141 W. Va. 302, 90 S.E.2d 288 (1955); *Stowers v. Blackburn*, 141 W. Va. 328, 90 S.E.2d 277 (1955). Similarly, since the auditor has not been made a party, the case is not in a proper posture to determine her right to compensation for her services. *State ex rel. Warder v. Gainer*, 153 W. Va. 35, 167 S.E.2d 290 (1969).

The sole issue framed by the pleading is whether the chief executive of this State may be compelled by mandamus to fill a vacancy in a public office. Necessarily incident to adjudication of that issue, however, are determinations by this Court on questions of mootness and standing.

## I

The prayer of the mandamus petition requests that the Governor be compelled to fill the vacancy and submit the name of the nominee when the Second Extraordinary Session of the Legislature reconvened. Shortly after this case was submitted for decision, that session reconvened and adjourned.

Under the *Constitution* of this State, no regular session of the Legislature will convene until January 12, 1977.[1] Pursuant to the constitutional provisions regard-

---

[1]*Constitution of West Virginia*, Article VI, Section 18.

ing the time and place of assembly, the Legislature shall convene on that date, restricting its business to the election of its officers and the publication of election returns, and adjourn until February 9, 1977.[2] The respondent's term of office expires on January 16, 1977,[3] prior to the date that the Legislature may consider regular business.

However, under Section 19 of Article VI of the *Constitution of West Virginia*, the governor may by proclamation convene the Legislature whenever, in his opinion, the public safety or welfare shall require it. In addition, the governor has a duty to convene the Legislature upon the written application of three-fifths of the members elected to each house. Since the Legislature, either upon the application of the requisite number of its own membership or upon the call of the governor, can reconvene, the issue presented for decision in this case is not moot.

## II

The respondent Governor maintains that the relators have no standing to maintain this mandamus proceeding. We agree that the Joint Committee on Government and Finance does not have sufficient interest or authority to litigate the issue raised. While the committee is a statutory body representative of legislative interests, its purpose is to study and survey matters of government, finance and claims against the State. Its power is restricted to the submission of reports and the exercise of any such special duties or responsibilities as may be, by resolution, delegated to it.[4] There is no showing here, by resolution or otherwise, that the Joint Committee on Government and Finance has been authorized or empowered to institute and maintain this or any other case in behalf of the Legislature of West Virginia.

[2]*Ibid.*
[3]*Constitution of West Virginia*, Article VII, Section 1.
[4]*W. Va. Code*, 4-3-3, as amended.

We do not feel compelled to determined what standing William T. Brotherton, Jr., or Lewis N. McManus may have in their official capacities as President of the Senate and Speaker of the House. Any standing which could be demonstrated in this regard, either through the role of the Senate in the confirmation process or through the role of the House of Delegates in its consideration of appropriations, is superfluous. Both of these relators have standing to maintain the proceeding as citizens and taxpayers of this State.

We have faithfully adhered to the principle that a citizen and taxpayer may maintain a mandamus proceeding to compel any public officer to perform a nondiscretionary legal duty. *State ex rel. Brotherton v. Blankenship*, _____ W. Va. _____, 214 S.E.2d 467 (1975); *Delardas v. County Court*, 155 W. Va. 776, 186 S.E.2d 847 (1972). No special or pecuniary interest must be shown by individuals who sue in this capacity. *Frantz v. County Court*, 69 W. Va. 734, 73 S.E. 328 (1911).

### III

The crux of the issue which is properly before us turns upon the nature of the Governor's appointment powers. Article VII, Section 8 of the *Constitution of West Virginia* requires the governor to " ... nominate, and by and with the advice and consent of the senate, * * * appoint all officers ... created by law, ... " Section 9 provides that the governor shall fill by appointment any vacancy in a nonelective office which occurs during the recess of the Senate and to submit the name of the nominee for consideration at the next meeting of the Senate. In pertinent part, Section 9 provides:

> "In case of a vacancy, during the recess of the senate, in any office which is not elective, the governor shall, by appointment, fill such vacancy, until the next meeting of the senate, when he shall make a nomination for such office, and the person so nominated, when confirmed by the senate, (a majority of all the senators elected concurring by yeas and nays) shall hold his office

during the remainder of the term, and until his successor shall be appointed and qualified . . . ."

In *State ex rel. Wayne v. Sims, supra,* this Court held that the duty imposed upon the governor by the Constitution with regard to filling vacancies in nonelective offices was mandatory.

Were we limited in this case to determining the mandatory nature of the constitutional duty imposed by Article VII upon the governor, our decision would be a simple one. The issue of the right of the judicial branch to compel performance of that duty is, however, fraught with complexity.[5] It presents problems distinct from the usual considerations incident to the issuance of the writ in cases involving other executive officers. The existence of such right or authority must be determined within the context of Article V, Section 1 of the *Constitution of West Virginia* which provides:

> "The legislative, executive and judicial departments shall be separate and distinct, so that *neither shall exercise the powers properly belonging to either of the* others; . . . " (emphasis added)

There is wide divergence of opinion among the courts of this country upon the jurisdiction of state courts to compel a governor to perform an act pursuant to powers entrusted to him by constitutional or statutory provision. *Annot.,* 2 L.Ed. 107, 130; *Slack v. Jacob,* 8 W. Va. 612 (1875). The conflict results from varying interpretations of the fundamental principle of separation of powers found in the federal as well as most state constitutions.

Reasoning that within his constitutional duties and powers a governor is supreme—answerable only to the people and the impeachment process, some courts have refused to issue the writ against a chief executive regardless of the circumstances or duty involved. *Kelly*

---

[5]Chief Justice Marshall in *Marbury v. Madison,* 5 U.S. (1 Cranch) 49, 63 (1803), many years ago said such an inquiry is " . . . peculiarly irksome, as well as delicate; and excites some hesitation with respect to the propriety of entering into such investigation."

*v. Curtis,* 287 A.2d 426 (Me. 1972); *People ex rel. Bruce v. Dunne,* 258 Ill. 441, 101 N.E. 560 (1913); *Rice v. Draper,* 207 Mass. 577, 93 N.E. 821 (1911); *People ex rel. Sutherland v. Governor,* 29 Mich. 320 (1874).

Courts in other jurisdictions, however, tempered perhaps by a less restrictive interpretation of the "separation principle," acknowledge the right and authority to mandamus the governor in limited instances involving the existence of a nondiscretionary statutory duty. *Tennessee & C.R.R. v. Moore,* 36 Ala. 371 (1860); *Middleton v. Low,* 30 Cal. 596 (1866); *Greenwood Cemetery Land Co. v. Routt,* 17 Colo. 156, 28 P. 1125 (1892); *State ex rel. Trauger v. Nash,* 66 Ohio St. 612, 64 N.E. 558 (1902); *State ex rel. Irvine v. Brooks,* 14 Wyo. 393, 84 P. 488 (1906).

Our own decisions are reflective of the moderate position. In *State ex rel. Kelly v. Moore,* 156 W. Va. 780, 197 S.E.2d 106 (1973), we issued a writ of mandamus to compel the governor's obedience to a nondiscretionary duty under the statutory law of this State.

Where, however, the act required of a governor is "political" in the sense that it necessitates the exercise of executive discretion and judgment, the right of the courts to compel performance is uniformly held to be nonexistent. *Insane Asylum v. Wolfley,* 3 Ariz. 132, 22 P. 383 (1889); *Miles v. Bradford,* 22 Md. 170 (1864).

Consistent with this tenet is our decision in *Hatfield v. Graham,* 73 W. Va. 759, 81 S.E. 533 (1914). Although the *Hatfield* decision involved the issuance of a *writ of prohibition,* the applicability of this remedy was predicated upon the theory that courts of this State were without jurisdiction to review the actions of a governor in the exercise of his constitutional *political* (discretionary) powers.

The difficulty in determining our jurisdiction in mandamus proceedings of this character lies then in distinguishing between the "political" or discretionary powers

and the ministerial duties of the governor.[6] It is a distinction some courts have declined to make.[7]

There is authority for the general proposition that the appointment of officers and employees involves the exercise of discretion and is not controllable by mandamus. *Allen v. Byrd,* 151 Va. 21, 144 S.E. 469 (1928). Such authority fails to distinguish between the nondiscretionary duty to *act* and the highly discretionary duty to *choose.*

This Court has previously held that the duty to appoint is a duty which can be enforced by mandamus. *State ex rel. Dieringer v. Bachman,* 131 W. Va. 562, 48 S.E.2d 420 (1948). The principle is equally applicable to the governor's appointment duties under Article VII. While mandamus cannot be used to compel the choice of a particular individual, it can be used to compel the exercise of the appointment power. To require less, deprives the Senate of its constitutional power to confirm or reject those to whom the chief executive has entrusted the administration of public affairs.

With constitutional appointment powers thus vested in both the governor and the Senate, it is our duty to assure that the people's charter to its officials is so respected by each as to prevent either from excesses and to maintain the delicate balance among all the separate branches thus created. We do this in the case before us by holding that the Governor's duty to appoint may be enforced to require the exercise of choice after the passage of an unreasonable period of time.[8]

We would be insensitive to the realities of public administration and abusive to the discretion of choice vested in a governor to hold that the act of appointment

---

[6]*See, People ex rel. Sutherland v. Governor,* 29 Mich. 320 (1874); *Kelly v. Curtis,* 287 A.2d 426 (Me. 1972).

[7]*Ibid.*

[8]*See, State ex rel. Nelson v. Ritchie,* 154 W. Va. 644, 177 S.E.2d 791 (1970).

may be compelled at the instant of a vacancy.[9] The multitude of appointments which a governor must make,[10] the frustration of securing the services of sufficiently competent individuals for the critical responsibilities which must be filled, the special qualifications that some of these tasks require and the renumeration that is often disproportionate to the demands of the office, combine to make difficult in fulfillment, that duty which is so easily proclaimed.[11] Though onerous, such duty is implicit in the nature of the office of chief executive and it cannot be postponed unreasonably.

In the circumstances of this case where a vacancy has existed in the office for more than two years, the failure of the Governor to exercise his power to appoint is subject to control by mandamus.

For reasons stated in this opinion, the writ of mandamus is issued, requiring the respondent to nominate an individual for the position of Superintendent of the West Virginia Industrial School for Girls and to submit the name of the nominee to the Senate for its consideration at its next meeting.

*Writ, as moulded,*
*awarded.*

---

[9]*See,* 50 Ops. Att'y Gen. Reports 607.

[10]The relators reveal that 101 names were submitted for confirmation at the Second Extraordinary Session of the 62nd Legislature on July 26, 1976.

[11]The respondent has called to our attention 6 present and 20 past officeholders who have acted during vacancies since 1921 which have ranged from two months to over four and one-half years in duration.