376 S.E.2d 178

**Richard A. TRUMKA, President, UMWA; Cecil E. Roberts, et al., Petitioners,**

**v.**

**Honorable Arch A. MOORE, Jr., Governor; and Kenneth R. Faerber, Commissioner, West Virginia Department of Energy, Respondents.**

**No. 18741.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

James M. Haviland, W.J. Arceneaux, III, McIntyre, Haviland & Jordan, Charleston, Michael Holland, Gen. Counsel, UMWA, Washington, D.C., for petitioners.

BROTHERTON, Justice:

The petitioners in this original mandamus proceeding are Richard L. Trumka, Cecil E. Roberts, and John J. Banovic, the President, Vice President, and Secretary–Treasurer, respectively, of the United Mine Workers of America; and William Willis and Gary Asher, members of the West Virginia Board of Coal Mine Health and Safety and the United Mine Workers of America. The respondents are Arch A. Moore, Jr., the Governor of West Virginia, and Kenneth R. Faerber, the Commissioner of the West Virginia Department of Energy.

The petitioners ask this Court to issue a writ of mandamus requiring: (1) Governor Moore to immediately appoint a Health and Safety Administrator pursuant to W.Va. Code § 22–6–3(c) (1985) and § 22–6–4b(a) (1988); (2) Commissioner Faerber to comply with W.Va.Code § 22–6–3(d) (1985) in order to ensure a monthly meeting of the West Virginia Board of Mine Health and Safety; (3) Commissioner Faerber to stop unnecessary expenditures from the Board's revenue accounts; and (4) Commissioner Faerber to immediately make available to the Board a person qualified to serve as acting health and safety administrator and acting secretary to the Board, at no charge, pursuant to W.Va.Code § 22–6–3(a)(6) (1985), so that the Board may conduct its business. The petitioners also ask this Court to rescind Governor Moore's appointment of Thomas P. Stockdale and Garrick Lloyd Hopkins to fill the expired seats of Charles A. Boggs, III and William "Bolts".Willis on the West Virginia Board of Coal Mine Health and Safety.

We will address each of the petitioners' requests in turn.

I.

This Court has long held that "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). However, we have also recognized that "[w]hile it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie." Syl. pt. 4, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981); *see also United Mine Workers of America v. Miller*, 170 W.Va. 177, 181, 291 S.E.2d 673, 677 (1982); *United Mine Workers of America v. Scott*, 173 W.Va. 356, 363, 315 S.E.2d 614, 621 (1984).

The petitioners seek to enforce specific nondiscretionary obligations which they claim the respondents have a clear legal duty to perform. As we have noted in similar proceedings in the past, "[t]he crucial issue involved in each of the petitioners' claims is ... whether the particular statutes upon which they rely provide for the performance of the acts they seek to compel." *United Mine Workers of America v. Miller*, 170 W.Va. at 181, 291 S.E.2d at 677.

II.

The petitioners first ask this Court to issue a writ of mandamus compelling Governor Moore to immediately appoint a Health and Safety Administrator pursuant

to W.Va.Code § 22–6–3(c) (1985) and § 22–6–4b(a) (1988). This position was filled by Terry Farley until September, 1988, when Farley resigned and was subsequently assigned to work for the Department of Energy.[1]

It is clear that W.Va.Code § 22–6–4b(a) (1988) imposes a nondiscretionary duty upon the governor where it provides, in part, that "the governor shall appoint the health and safety administrator of the board for a term of employment of one year." We have often stated that "the word 'shall', in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syl. pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969). It is also well settled by this Court that "[a] peremptory writ of mandamus will issue to require the discharge by a public official of a nondiscretionary duty." Syl. pt. 4, *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612 (1939).

At the time the original petition in this proceeding was filed, the office of the health and safety administrator had been vacant for a period of less than two months. The respondents state that they attempted to comply with their statutory duties by appointing a new administrator, but that two persons to whom they offered the position declined. Further, the respondents indicate that uncertainty about the outcome of the 1988 general election impaired their ability to promptly appoint a new administrator. Although the administrator is appointed for a term of one year, renewable on an annual basis, and the appointment does not require Senate confirmation, we will allow for the possibility that the general election may have hindered the respondents' efforts to find an acceptable candidate for appointment.

In *State ex rel. Brotherton v. Moore*, 159 W.Va. 934, 230 S.E.2d 638 (1976), we held that "the Governor's duty to appoint may be enforced to require the exercise of choice after the passage of an unreasonable period of time." *Id.*, 159 W.Va. at 941, 230 S.E.2d at 642. However, we continued by stating that "[w]e would be insensitive to the realities of public administration and abusive to the discretion of choice vested in a governor to hold that the act of appointment may be compelled at the instant of a vacancy." *Id.*

In view of the short period of time between the resignation of the former administrator, the filing of this petition, and the general election, we decline to issue a writ of mandamus compelling the Governor to exercise his appointment power at this time. However, we would emphasize that in order to ensure the safety of those who work in the coal mining industry, this position should be promptly filled as soon as the new Governor has assumed his duties.

### III.

The petitioners next charge that Commissioner Faerber has interfered with the Board's ability to hold monthly meetings as required by W.Va.Code § 22–6–3(d) (1985), which provides, in part, that "[t]he board shall meet at least once during each calendar month, or more often as may be necessary ...."

The petitioners state that in October, 1987, a monthly meeting to be held in Charleston was abruptly moved to Blackwater Falls in Davis, West Virginia. Thereafter the Board voted to set the date and location of future meetings. In September, 1988, the Board's monthly meeting

---

1. It would appear from the briefs that the former administrator, Terry Farley, had failed to perform many of his statutory duties as administrator, including the preparation of an analysis of all coal mining fatalities and major causes of injuries within ninety days of any accident as required by W.Va.Code § 22–6–4b(f) (1988), and assisting in the preparation of the Board's annual report on the major causes of coal mining injuries prior to July 1 each year, as provided in W.Va.Code § 22–6–4(e) (1985). At the time the original petition in this proceeding was filed, the petitioners charged that Farley had missed the ninety-day deadline for five mine fatality analyses and that neither the 1986 nor the 1987 annual reports had been completed. Nevertheless, upon his resignation from the position of administrator, Farley was rewarded by being assigned to another position within the Department of Energy. This conduct does little to bolster confidence in the efficiency of the Department of Energy.

was cancelled, contrary to W.Va. Code § 22–6–3(d) (1985) and the Board's prior resolution. The respondents claim that the September 28 and 29, 1988 meetings were cancelled because of the administrator's resignation, while all October meetings were cancelled due to the lack of an administrator, scheduling conflicts, budget hearings, and the fact that this lawsuit has left the Board in limbo.

■ The goals of the Board of Coal Mine Health and Safety are implicit from its title, which indicates the reason for its creation. The well-being of the coal industry is of primary importance to the well-being of this State. Therefore, legislation which is designed to help ensure the health and safety of those employed in the mining of coal must be enforced. West Virginia Code § 22–6–3(d) (1985) imposes a mandatory duty upon the Board of Coal Mine Health and Safety to meet once a month to discuss issues relevant to improving coal mine health and safety. Personnel changes and the other somewhat lame excuses advanced by the Board do not obviate the Board's responsibility to hold this monthly meeting.

■ This Court finds that Commissioner Faerber, who serves as Chairman of the Board by virtue of W.Va.Code § 22–6–3(a)(6) (1985), has failed to ensure a monthly meeting of the Board, and we therefore issue a writ requiring the performance of this statutory duty. Pursuant to the Board's own resolution, each monthly meeting can then be cancelled only upon a vote of the majority of the Board.

## IV.

The petitioners also allege that Commissioner Faerber has unnecessarily attempted to deplete the Board's revenue account, which was established by W.Va.Code § 22–6–4b(e) (1988). In essence, the petitioners

seek clarification as to what expenses the Commissioner can charge to the Board from the legislative appropriation made to the Board and the Technical Review Committee, and what services the Commissioner is expected to provide for the Board pursuant to § 22–6–3(a)(6) (1985) without charging the Board account.

■ Ordinarily, this Court would not entertain a question of how expenses should be allocated between agencies within a department in a mandamus proceeding. Both the State Department of Energy and the Board of Coal Mine Health and Safety seek the same goals—increased coal production based on the health and safety of the producers of the coal. Unfortunately, it appears as though the Commissioner is more interested in restricting the operation and duties of the Board than in working in harmony to achieve these goals. Since the parties cannot reach a reasonable agreement and because the duties of the Board must be performed so as to ensure the health and safety of West Virginia's coal miners, this Court does hereby order the Commissioner to refrain from charging the Board pro rata rent and other expenses. The Commissioner shall provide for the Board members' per diem expenses as outlined in W.Va.Code § 22–6–7 (1985), which states, in part, that "[t]he reimbursement shall be paid out of the state treasury upon a requisition upon the state auditor, *properly certified by the commissioner of the department of energy.*" (emphasis added). The Board shall pay all other expenses from its 1988 legislative appropriation.[2]

## V.

The final issue before this Court in this mandamus proceeding is the petitioners' request that we rescind Governor Moore's

---

**2.** West Virginia Code § 22–6–4b(e) (1988) provides that:

Appropriations for the salaries of the health and safety administrator and any other employees of the board and for necessary office and operating expenses shall be made to a budget account hereby established for those purposes in the general revenue fund. Such account shall be separate from any accounts

or appropriations for the department of energy.

A similar funding mechanism for the Technical Review Committee is found in W.Va.Code § 22–6–4c(10) (1988). According to the respondents, the 1988 Legislature appropriated $135,000 to the Board of Coal Mine Health and Safety and the Technical Review Committee pursuant to these statutory authorizations.

appointments of Thomas P. Stockdale and Garrick Lloyd Hopkins to fill the expired seats of Charles A. Boggs, III and William "Bolts" Willis on the West Virginia Board of Coal Mine Health and Safety.

The petitioners allege that Mr. Stockdale is not eligible to serve in the "neutral" management seat described in W.Va.Code § 22–6–3(a)(4) (1985) because he is, or was, "employed by a mining business entity in a managerial or supervisory position" "prior to his appointment to the Board," in contravention of the requirements of W.Va.Code § 22–6–3(a)(4) (1985). The petitioners further allege that Mr. Hopkins' appointment to Mr. Willis' expired seat did not comply with W.Va.Code § 22–6–3(e) (1985), which described how vacancies on the Board are to be filled.

Mr. Hopkins was appointed to be an operator representative as described in W.Va. Code § 22–6–3(a)(1) (1985), while Mr. Stockdale was appointed to serve in the neutral management position described in § 22–6–3(a)(4) (1985). West Virginia Code § 22–6–3(a)(5) (1985) states that "[a]ll appointments made by the governor under the provisions of subdivisions (1), (2), (3) and (4) of this subsection *shall be with the advice and consent of the Senate.*" (emphasis added).

Mandamus will not lie to rescind appointments which require Senate confirmation. We will not interfere in an appointment procedure in which only the Governor and the Senate have designated roles. Ever mindful of the delicate balance we strive to maintain between the three branches of government, we believe that the propriety of these appointments is best determined by the Senate during confirmation hearings in the 1989 session of the Legislature. The petitioners have every right to appear at these hearings and make their objections known.

For the foregoing reasons, we grant the writ of mandamus as moulded.

WRIT GRANTED AS MOULDED.